

# In The United States District Court
# For The Eastern District OF Pennsylvania

Gartor Kiki Brown

V.                                    NO:17-CV-1138

Chester County, et al.,

## Plaintiff Motion To Compel

### Prior History

1) Brown initiated a Supplental Request for Production of Document (Exhibit F) dated 4/7/22 directed to Chester County defendants with this Brown also initiated the Cited Interrogatories (Exhibits B,C,D,E,H)

2) Defendants simultaneously responsed as the Court Granted Browns Motion to Compel (Doc 139).

3) Defendants only Produced their "Searches & Use of force Policy's (Exhibit I) Correspondence dated May 11, 2022, defendants expressed their did not send (6) videos Pursuant to the incident in Brown's complaint.

4) Defendants also did not acknowledge any of Brown's Interrogatories (Exhibits B,C,D,E,H) Please note (Exhibit B) acknowledge C/o Bolden as a defendant. As Brown's Amended Complaint was Granted to Amend C/o Bolden Pursuant to E.C.U. team activation on 11/14/16 as there where some Confusion due to defendants being "Masked UP".

5) I articulate a Correspondance to Lamb McErlance PC dated June 2, 2022 (Exhibit J), with no response.

6) I articulated a Motion to Consult with the Court dated 7/17/22 (Doc 149) Pursuant to some of these same issue, to whom is the Cause for this Current Motion.

# LAMB McERLANE PC

### ATTORNEYS AT LAW

(Exhibit I)

Rachel E. Lusk, Esquire
Direct 610-701-4416
Fax 610-696-6668
rlusk@lambmcerlane.com

May 11, 2022

**_VIA FIRST CLASS MAIL_**
Moshannon Valley Correctional Center
Gartor Kiki Brown
555 GEO Drive
Philipsburg, PA 16866



Re:   ***Gartor Kiki Brown v. Chester County, et al.***
      **No. 2:17-cv-01138-GAM**

Dear Mr. Brown:

I am in receipt of Plaintiff's Motion for Extension of Time (ECF No. 137), which was denied by Judge McHugh on April 18, 2022 (ECF No. 138), and Plaintiff's Supplemental Request for Production of Documents dated April 15, 2022 (ECF No. 137). This letter is in response to your three supplemental document requests.

With regard to Request No. 1, as my colleague, Guy Donatelli, previously stated in his March 19, 2019 letter to you (a copy of which is enclosed), we cannot, and will not, send you the six video recordings in the County of Chester's possession until you provide confirmation that you have the ability to receive and view them, and how they should be transmitted (i.e., via CD, thumb drive, secure email to your counselor, or otherwise).

With regard to Request No. 2, enclosed please find Chester County Prison's policies on cell searches, including strip searches.

With regard to Request No. 3, enclosed please find Chester County Prison's Use of Force Policy.

Neither the County of Chester nor Chester County Prison have any other documents responsive to your Supplemental Request for Production of Documents dated April 15, 2022.

Very truly yours,

**LAMB McERLANE PC**

By:  _Rachel Lusk_
     Rachel E. Lusk

Enclosures

# In The United States District Court For The Eastern District Of Pennsylvania

Gartor Kiki Brown

V.

Chester County et al.,

(Exhibit H)

NO. 17-CV-1138

# Plaintiff's Interrogatories Addressed To Defendants Swift, Stevenson, McGroarty

Pursuant to Rule (33) Fed.R.Civ.P, the Plaintiff Submits the following interrogatories to defendants, You are directed to answer each interrogatories in writing under oath, and provide plaintiff with copies of each of the requested documents within (30) days of being served. These interrogatories must be sign

1) Please explain in your own words, the manner in which the incidents referred to in Plaintiff's Complaint from 11/13/16 - 11/18/16 occurred, or every encounter you had with Plaintiff around this time

2) At anytime from 11/13/16 - 11/18/16, did you deprive Plaintiff of any basic necessity not limited to food & water, shower, bed, sheets etc...

3) From 11/13/16 - 11/18/16 did you work on I-block in Chester County Prison; also at anytime around this time did you work on a medical block or around Brown while he was housed in medical.

4) At any time did you tell Brown he would have to walk to trat slot before he could eat.

5) Are you aware of any Policies, Customs of excessive cell searches, strip searches, or cavity searches on I-block in November of 2016, where you were part of any searches against Brown

6) Have you been under investigation for any wrong doings at Chester County Jail, causing injuries, death, or hardship

# In The United States District Court
# For The Eastern District OF Pennsylvania

Gartor kiki Brown

v.

Chester County et.al.,

(Exhibit E )

No. 17_CV_ 1138

## Plaintiff's Interrogatories, Addressed TO Defendants
## Mcfedden And CPT. Miller

Pursuant to Rule (33), Fed.R.CiV.P., the Plaintiff Submits the following interrogatories to defendants. You are directed to answer each interrogatories in writing under oath, and provide the Plaintiff with copies of each of the requested documents, within thirty (30) days of service thereof, as Per Pa.R.CiP. 4005. These interrogatories are addressed to defendants Warden McFedden and CPT. Miller, party in this action. These interrogatories must be Sign by such party, before a Notary Public.

1) Directed to both Warden McFedden and CPT. Miller; explain fully the manner in which the incidents from 11/12/2016 through 11/15/16 referred to in Plaintiff's ComPlaint occurred be SPecific day by day.

2) Directed to both defendants; can you Predicate all encounters made with Plaintiff from 11/12/16 through 11/18/16 by both defendants, be SPecific.

3) Directed to Warden McFedden, can you make clear, as to the texture of your Search Policys while inmates are housed in the R.H.U, ; can the inmate have his legal PaPers, How often can the inmate cell be Search a day, dose it include strip and rectal searches, just walk me through your Procedure you had in Place 11/12/16 through 11/16/16, it should also be analyzed Separately as to if an inmate complys and as to an inmate refusing

4) Directed to CPT. Miller, Can you explain or walk me through the Procedure in Place as to the CEU team activating on an inmate while in the RHU, How do you deside what is used for the activation, is the inmate extracted put the cell tooken to a strip cage checked for injuries, counted over. Put into a different cell, can you be very SPecific, with out confusing you let's say the situation is the inmate refuse to Cuff and be Search; walk me through you Procedure with due reSPect.

5) Directed to both warden McFedden and CPT. Miller, has their been an incident where the inmate was activated on in the RHU, cell useing force, to restraint while in the cell, Search in the cell, left in the cell with out clothing, if so walk me through to whom and how the inmate was Search, how many time has it occured during the Pass five years?

6) Directed to Warden McFedden and CPT. Miller, have you been under investigation for any wrong doing by in house Administration or outside government agency while employed at Chester county Prison, including but not limited to injuring an inmate, force, death, searches also any Pending or outPending litigations in which you was a or is a defendant?

7) As is records What are the names of the two transporting officers from the Chester county Sheriffs dePartment that transported Plaintiff back to C.F.C.F. Prison on 11/18/16 ?

# In The United States District Court
# For The Eastern District OF Pennsylvania

Gartor kiki Brown

(Exhibit D)

V.

No. 17-CV-1138

Chester County et al.,

## Plaintiff's Interrogatories Addressed To Defendant Harding

Pursuant to Rule (33), Fed. R. civ. P., the Plaintiff Submits the following interrogatories. You are directed to answer each interrogatories in writing under oath, and provide the plaintiff with copies of each of the requested documents, within thirty (30) days of service hereof, as per Pa. R. C. P., 4005. These interrogatories are addressed to sgt. Harding a party in this action. These interrogatories must be signed by such party, before a Notary public.

1) Sgt. Harding can you explain all encounters made with the Plaintiff from 11/12/16 through 11/18/16 while he was housed at chester county?

2) What is your classification policy pursuant to housing inmates produce them, also what is the procedure or explain the procedure have to follow if you are call to an inmate dispute and both inmates claim they do not one to be housed together, in which one inmate claim he was assaulted or is being assaulted by the other inmate?

3) On 11/12/16 while meeting with Brown was you aware of a open cell next door to N-49 were Plaintiff was housed, or other open cells on other blocks in the prison?

4) Do you have any recording of your movement on N-block the night of 11/12/16 if so can you produce the tape, and at anytime did other inmates tell you what they thought was going on in cell 49 on N-block on 11/12/16?

5) Have you been under investigation for any wrong doing by in house Administration or outside government agency while employed at chester county prison including but not limited to serious injuries, ignoring inmate on inmate assaults, forced death, searches, also are you a defendant in any pending litigation or out pending litigations if so explain.

6) After you witness an assault of Brown did you see to it he got medical treatment?

Dear, Mr. Donatelli                                              (Exhibit "J")          June 1, 2022

This is Pursuant to your response at Lamb McErlane PC for Chester County & it's defendants. I received the polices for use of force & searches. However non of my Interrogories were answer as to defendants Shores, Haines, Whiteside, Bolden, Nivages, Sgt. Lylor, Harding, Mcfedden, Miller, Swift, Stevenson, Mcgraw. Thus no Interrogories on this case has been restoned to.

My Concerns are also with the (6) Videos the county has been with holding. I'am currently at Moshannon valley Jail at 555 Geo Drive, Philisburg, I beleive my Counslor name is T. Lumadue I do not have a number for her. But You may transmitt the Video via CD or thumbdrive by contacting Moshannon valley I conclude a federal order is already in Place to Present these videos (Doc 139).

S/Garlor Brown

# In The United States District Court
# For The Eastern District OF Pennsylvania

Gartor Kiki Brown

(Exhibit C)

V.

NO. 17_CV_1138

Chester County etal.,

## Plaintiff's Interrogatories Addressed To Defendants Nivages And Sgt. Tylor.

Pursuant to Rule (33), Fed. R. Civ. P., the Plaintiff submits the following interrogatories to defendants. You are directed to answer each interrogatories in writing (under oath) and provide the Plaintiff with copies of each of the requested documents, within thirty(30) days of service hereof, as per Pa. R.C.P. 4005. These interrogatories are addressed to Nivages and Sgt. Tylor, Partys in this action, the interrogatories must be sign and or by such Party, before a Notary Public.

1) Directed to both Cpt Nivages and Sgt. Tylor, explain fully the manner in which the in cidents, referred in Plaintiff's complaint from 11/13/16 through 11/18/16 to the best of your knowled day by day, be very specific.

2) Directed to Cpt. Nivages, at anytime on or pursuant to Brown cellmate at the time refusing to lock in to cell N_49 were he was housed with Brown, was he disciplain for his actions on 11/13/16?

3) Directed to both defendants, can you explain all encounters with the Plaintiff from 11/13/16 through 11/13/18?

4) Directed to both defendant's at anytime was you aware of Plaintiff being deprived of any basic necessity search as but not limited to food, water, clothing, bed, etc; during the time of 11/13/16 through 11/18/16 also medication be specific.

5) Directed to both defendants, is it routine af Chester County Prison that officials use force on inmates; from experience have you been under investigation for any wrong doing by in house administration or outside government agency while employee at Chester county prison including but not limited to serious injuries from use of force, unlawful use of force, death, searches cell cavity, also are you a defendant in any pending or out pending litigations?

6) What is your procedure on searches while housed in the RHU Cpt. Nivages, you can be brief I have alread asked warden Mcfadden and Cpt. Miller to be specific, also, are you aware of any inmate grievances pursuant to the searches in the last 5 years, has any inmate been injured for refuseing the searches while housed in the RHU?





# In The United States District Court For The Eastern District OF Pennsylvania

Gartor Kiki Brown

(Exhibt B)

V.

NO. 17-CV-1138

Chester County, et al.,

# Plaintiff's Interrogatories Addressed To Defendants Shores, Haines, Whiteside, Bolden

Pursuant to Rule (33) Fed.R.Civ.P, the Plaintiff submits the following interrogatories to defendants, You are directed to answer each interrogatories in writing under oath, and provide the Plaintiff with copies of each of the requested documents within (30) days of being service. These interrogatories must be signed.

1) Are you aware of any routine practice of excessive force? Please explain the procedure of plan use of force, be specific.

2) Pursuant to Brown's complaint, do you remember useing or witnessed the use of any wepons not limited to stun shield, O.C. gas, during any plan or unpland use of force from 11/13/16 - 11/16/16. What are some effects a stun shield & O.C. gas could have on on inmate with asthma?

3) Please, explain in your own words the manner in which the incidents referred to in Plaintiff's complaint from 11/13/16 - 11/18/16 occured, or every encounter you had with the Plaintiff.

4) Have you been under investigation for any wrong doing at chester county jail, causing injuries, death, or hardship?

5) Are you aware of any policies, customs of excessive cell searches, strip searches, or cavity searches on I-block in November of 2016?

6) At anytime pursuant to Plaintiff's complaint did you deprived Brown of any basic necessity, food, water, shower, clothing, bed, sheets etc...

**CHESTER COUNTY PRISON**

( Exhibit A )

## J-BLOCK EVEN SIDE MAXIMUM SECURITY INMATES (Level 5)

1. During the 8 to 4 shift and 4 to 12 shift, this block (J-Block) shall be manned by two Officers at all times. Whenever an Officer needs to leave the block, he must be relieved first. This applies to all shifts. The two officers will work closely together in all situations with their immediate supervisor. During 12 to 8 shift, one officer will be assigned to Maximum Security. When it is necessary to move an inmate, an escorting Officer will be called via Central Control to escort the inmate off the block. In the event a female officer is assigned to the housing unit, she will be assigned to work in the control room. The female officer is never to go out into the housing areas unless there is an emergency or is escorted by a male officer.

2. No inmate will be released off this quad without an escorting officer present. A pat search will be conducted before leaving and upon return to the block. Central Control must be notified of any inmate movement off the block.

3. This particular unit has the capacity to house 30 inmates (two inmates per cell). It has one three-person shower and one utility closet on the tier. All cleaning of the housing unit and showers will be done per block schedule. There will be one inmate assigned as Tier man for this housing area of both J-Block Even and Odd Sides, and any cleaning will be done when all other inmates are secured in their cells. Dayroom closets must be secured at all times when inmates are in the dayroom.

4. Under the supervision of the officer, inmates will make their beds and sweep cells on a daily basis. All housing areas are to be kept neat and clean at all times.

5. Maximum security inmates will receive an exercise period daily in accordance with the custody level assigned to the inmate. Not all residents are exercised in the same manner. The maximum security exercise yard will be utilized for those authorized. Yard schedules will be posted.

6. Max yard will be offered to all max inmates per block schedule. Max yard is located in the lower corridor outside of J-Block in the Section V Urban Yard. Before any max inmate(s) is(are) escorted to Max Yard Central Control must be notified and given the exact number of max inmates participating for max yard activities. Central Control will advise the block Officer when to release them, this is to insure maximum security and control of inmates and staff safety.

7. Three (3) meals will be served to regular maximum security inmates in the dayroom. All RHU inmates will be fed in their cells. Meals will be served to Maximum Security at the following times: Breakfast will be given at 0500 hrs. or as soon after as possible. Lunch will begin at 10:30 hrs. or as soon after as possible. Dinner will begin at 16:15 hrs. or as soon after as possible.

8. Haircuts will be by inmate request slip and offered per block schedule. Inmates will be escorted to the barber shop in the lower corridor and supervised by the officer assigned to the barber shop and the escorting Officer.

## CHESTER COUNTY PRISON



9. Shaving will be permitted Monday, Wednesday and Friday. Razors will be kept in the Control Room. Shaving will begin at 1400 hrs. All razors will be issued and collected at one time. The Maximum Security Officer will see to it that all razors are marked with the inmate's name and cell number. Razors purchased by Maximum Security inmates will not be given to them, but will be given to the Maximum Security Officer who will place them in the control room.

10. Medication will be issued as per the Medical Department's schedule.

11. Frequent cell searches will be conducted randomly.

12. Prior to the conclusion of all shifts once count has been cleared by Central Control all cells in RHU must be searched and all writing material must be returned and stored in the closet. The inmate is permitted to retain one religious item (Bible/Koran).


## MEDICAL HOUSING UNIT C/D BLOCKS AND MEDICAL CONTROL

This area is a three officer duty post. All assigned officers will report to Central Control immediately after roll call to retrieve a portable radio.


### Post - 1 Medical Control Room Officer

1. Medical control room officer will receive all pertinent information regarding inmates housed in the medical unit and receive overall block counts from previous shift officers. He or she will take possession of the control room keys and verify all equipment is present and is operational.

2. Medical control officer will maintain the medical control room log, he or she will keep an accurate account of pertinent information.

3. Medical control room officer is responsible for the operation of all lock door controls in the medical unit. He or she will not open any locked doors without positive identification of the person requesting. (No cell doors will be open without security personnel present).

4. Medical control officer will make all phone calls to respective housing units to have inmates sent to the medical department. He or she will insure that different housing classifications are not called at the same time. He or she will assist in maintaining separation of male and female inmates in their respective waiting and treatment areas.

# CHESTER COUNTY PRISON

## Administrative Segregation

Administrative Segregation is a classification designation for:

- Those inmates deemed to be volatile and an immediate threat to other inmates or staff or to the good order and discipline of the facility.

- Those inmates who require close supervision and restrictions on freedom of movement or are on Security Alert Status.

- Those inmates who cannot or will not make a satisfactory adjustment to confinement in the general population.

- Those inmates classified Administrative Segregation pending an institutional misconduct.

- Those inmates classified Administrative Segregation for other reasons as determined by the Warden.

## Visitation

1. All regular Maximum Security Inmates are permitted phone visits in accordance with the Visiting Schedule.

2. Upon Administrative review and approval, inmates on Level six (6) are permitted to have phone visits.

3. Due to the disruptive and aggressive behavior all inmates on Level Seven (7) are not permitted to have visits.

## Prison Security and Inmate Safety

If items discussed in this Stipulation such as visits, showers and etc..., are denied to inmates for Prison security or inmate safety, a notation of the reasons for such denial will be placed in the inmate's file. Any inmate that is placed on a cuff order must be cuffed prior to exiting the cell.

# CHESTER COUNTY PRISON

Custody Level 7 inmates are permitted the following privileges:

1. Exercise – Separately, One (1) hour daily on block, 5 days per week
2. Mail – viewed & returned.
3. Religious services - Chaplain visit, when approved.
4. Visits - None
5. Showers – three (3) times per week
6. Cosmetics - Used and returned when approved.
7. Law Library materials upon Request - when approved.
8. Clothing-County Issue only (2 sets).

## Items Permitted In Cell

Clothing, sheets and/or blankets (depending on temperature) and mattresses shall be issued for all cells except under circumstances designated as follows:

1. In cases of inmates with suicidal tendencies these policies may be modified at the discretion of the Medical department and the Administration, denial of sheets, blankets, and/or mattresses is necessary when: (a) the inmate has attempted suicide; or (b) the Prison has reason to believe the inmate will attempt suicide and the Prison staff has contacted or does intend to contact appropriate medical personnel within a reasonably brief period of time until then inmate will be placed on a smock.

2. Where abuse of a prior mattress, sheet(s), blanket(s), and clothing has occurred, it is not necessary to reissue such item(s) until such time as the inmate's condition has stabilized.

3. In view of the Prison's concern with fire, where an inmate has set a fire within the Prison, he may also, in the discretion of the Prison, be denied a mattress, sheet(s) and/or blanket(s) for a reasonable period of time until the inmate's condition has stabilized.

4. At no time while housed in RHU will any inmate be permitted to have anything in his cell except for one religious item (Bible/Koran/Other).

5. RHU inmates will have access to their legal, religious, and writing material upon request for the length of the shift, and then return it.

6. An RHU inmate will be issued his cosmetics during his shower period and all items will be returned before leaving the shower area. Inmates that do not shower will be given their cosmetics allowing them a few minutes to take care of their hygiene needs and then return all items to their block officer.



# CHESTER COUNTY PRISON

## MAXIMUM SECURITY POST ORDERS AND REGULATIONS

J- Block is the housing unit for Maximum security inmates, which consists of three classification levels and two housing units: the Maximum Security Section and the RHU (Restricted Housing Unit). The Maximum Housing Unit Inmates with a Custody Classification of Level 5 are housed on the Even Side of J-Block, while those inmates classified as Level 6 and Level 7 are housed on the Odd Side of J-Block.

**At any time when a female officer enters a male housing unit, there shall be an announcement made that a female officer is on the unit.**

## J-BLOCK ODD SIDE RHU (LEVELS 6 AND 7)

This unit houses inmates that have exhibited a more disruptive, hostile and assaultive behavior in the recent past towards other inmates or staff. The status of these inmates is to be reviewed every 24 hours by the administration and documented.

### Custody Level - 6 Disciplinary Segregation

Located in Restricted Housing Unit, this area of restriction will house those inmates who have been assaultive in the recent past towards other inmates or staff and are "working" their way up to the less restrictive housing areas. All cosmetics will be secured in the red lockers provided in the block Control Room. The **status of these inmates is to be reviewed every 24 hours by the Administration and documented.**

Custody Level 6 inmates are permitted the following privileges:

1. Exercise – One (1) hour daily yard/ block, 5 days per week
2. Mail and/or Legal material - viewed and returned.
3. Religious services - Chaplain visit, when approved.
4. Visits - conditional to administrative review (phone only).
5. Showers - three (3) times per week.
6. Cosmetics - essential items, distributed as needed and returned.
7. Law Library materials upon Request.
8. Clothing-County issue only (2 sets).

### Custody Level 7 - Disciplinary Isolation

These inmates will be located in the Restricted Housing Unit or others as space requires. This area of segregation will be exclusively reserved for the violent offender who has exhibited extremely disruptive or assaultive behavior and is considered to be a threat to themselves and/or to others. All cosmetics will be secured in the red lockers provided in the block Control Room.

**The status of these inmates must be reviewed every 24 hours by the Administration and documented.**

# CHESTER COUNTY PRISON

**NEW INTAKE SEARCH PROCEDURE for (R-Block/O-Block/M-Block/J-Block/B-Block/5C's)**

The following procedure would include a search of all property brought to the blocks by New Intakes immediately upon their arrival on the block and would be completed as follows:

- Upon being escorted to the block, the New Intake **will surrender his / her property** to the Block Officer(s) in the Sally port or Dayroom area.

- At this time, the Block Officer will lay out all of the inmate's property on an extra sheet/blanket provided on block to avoid any sanitation complaints from inmates in the event that their own linens were laid on the floor.

- All Linens, Property, Clothing and other items in the Intakes possession **will be thoroughly searched** and laid out on the aforementioned sheet/blanket in front of the inmate.  This eliminates the need to complete an additional inventory sheet as the search is being conducted with the inmate present.

- After completing the search of the inmate's property, **a thorough pat down will be conducted** of the inmate's person. Then he / she will be allowed to collect their belongings and proceed into the Housing Unit / Quad.

- Reports / Citations will be completed in response to any Contraband which is found. All Contraband **will be confiscated** and submitted to the Section Supervisor so they can determine if it should be stored in evidence or disposed of.

This procedure will afford Officers the opportunity to observe all property being brought to the block by New Intakes and also confiscate any Contraband that inmates have elected to hide in this property, rather than in a body cavity or other unreachable area.

In the event that a larger number of Intakes (although 3 or 4 preferred) are brought to the Housing Unit at one time, (R-Block /O-Block /5C's) the I.D. Officer escorting the inmates should assist the floater with searches to expedite the process.

**Responsibilities**

An inseparable component of all your rights and privileges is responsibility. You have the responsibility to cooperate with any staff member. If you believe that something is unreasonable, you still must cooperate and then file a complaint, after the fact.  Generally, your behavior should be the same as is expected of any law-abiding member of the community and you are expected to:

- Respect others when speaking to them
- Be familiar with and obey the rules and regulations of the prison
- Refrain from infringing upon the rights of others
- Cooperate with staff at all times
- Report any problems that you encounter or observe

***Most importantly, be aware that you will be held responsible and accountable for all of your actions and behavior while you are here!***

**EMERGENCY**

When officers enter a housing unit responding to an incident, i.e. fights, medical emergency, suicide, etc., all inmates will proceed to your assigned cell and remain there until further instructions from the correctional staff on the scene.  If you remain in the general area of an incident, after staff have responded and assumed control, you will be identified as having involvement in the incident.

If you interfere with correctional staff during an emergency situation, you will be charged with a disciplinary infraction and criminal charges may be filed.

***In the event of an emergency situation, contact an officer immediately!***

Follow all instructions or order by staff or other persons in charge during an emergency.

If an evacuation is ordered, remain calm and orderly.  Proceed from the housing unit to the proper exit doors as directed by staff. They have been trained in proper evacuation procedures and you will be moved to a "safe area" until the emergency situation is resolved.

## RIGHTS, PRIVILEGES AND RESPONSIBILITIES

You have the right to:

- Be treated impartially and justly
- Living conditions that are in compliance with state and local fire and safety laws and regulations
- A nutritionally adequate diet
- Clean orderly surroundings
- Personal grooming choices regarding appearance, which are limited only by prison requirements for safety, security, identification or hygiene
- Receive and send mail, including sealed correspondence with public official, attorneys, and officers of the court and other members of the legal system, subject to necessary limitations
- Have visits with civilians within the guidelines established for the program
- Be addressed by name rather than in a derogatory manner
- Be supervised by staff, not inmates
- Be free from corporal punishment, deliberate personal injury, deliberate property damage, harassment, or use of excessive force by staff
- Be free from discrimination based on race, religion, national origin, sex, age, handicap or political views in administrative decisions and access to programs, services and privileges
- Have access to the grievance system
- Unrestricted correspondence with attorneys
- Have access to legal materials
- Exercise
- Voluntary access to clergy and religious advisors/services, except where reasons for restriction exist
- Have access to health care

**Privileges**

Many programs and opportunities are offered to you while you are in custody, in addition to those that are described as rights. There are privileges that may be restricted or denied you, as a result of abuse of the privilege, unacceptable prison adjustment or misconduct. These privileges may include but are not limited to:

- Commissary
- Dayroom activities
- Recreational activities
- General use of the collect call telephones and
- Participation in programs within established guidelines

Revised 12-2008                                        34

## X.    OTHER INFORMATION

### REQUESTS/COMMUNICATION

Speaking with your housing unit officer can handle most routine housing unit questions. You may submit a written request (using a "request form", with your complete name, housing unit, county number and date. Address the request to the appropriate staff member and write a specific explanation of your request). You are to deposit this form in the "Request Box" provided on the housing unit. Staff will pick up the request forms, sort and distribute to their respective destinations for a response.

The repeated use of requests for frivolous, unfounded, misdirected or harassing communications to employees will not be tolerated.  An inmate who engages in this behavior will first be warned that her/his behavior must cease. Continuation of this behavior may result in all future communications, to any staff member, being processed and filed without response, and possible imposition of disciplinary charges.

### GRIEVANCES

*NOT EVERY COMPLAINT IS A GRIEVANCE, FOLLOW THE LISTED GUIDELINES!!!!!!*

A grievance may be filed to:
- Report an alleged violation of civil, constitutional or statutory right
- Report an alleged violation of prison policy
- Report an alleged criminal or prohibited act by a staff member
- Report an alleged condition existing within the prison that creates an unsafe or unsanitary living condition

A grievance may not be filed simply because you disagree with a staff member's decision or instructions, it must meet the above guidelines.

*Grievances must be filed on a "Chester County Prison Inmate Grievance Form"*
- You must follow the initial steps to file a grievance
- You may file a grievance only for yourself
- You may receive assistance from staff or another inmate in correctly completing the "Inmate Grievance Form"
- You may file only one grievance for each single incident.
- You may withdraw a filed grievance at any time.
- No staff member may retaliate against you for filing or withdrawing a grievance (Staff are forbidden to interfere in anyway with your right to file a grievance)
- You must file a written grievance within fifteen days after the potentially grievable event has occurred Disciplinary action is not a grievance matter (see appeal process).
- The "Inmate Grievance Form" is received from and returned to grievance officer.
- Any grievance not returned in 10 days will be void.
- An inappropriately filed grievance or one which cites a non-grievable issue will not be processed and returned to you with a reason for its return.

## DISCIPLINARY SANCTIONS AND SENTENCING

The disciplinary hearing officer has the authority to determine whether or not you are guilty of the cited offense(s) based on the evidence. This means that the disciplinary hearing officer finds some evidence to support the charge(s) that you committed the act(s) for which you were cited. Your simple denial of the charges shall not, in and of itself, refute your charges, nor shall absolute proof be required for conviction. Preponderance of evidence means that it is more likely than not that you committed the act(s) for which you were charged.

The disciplinary hearing officer may consider whether or not sanctions should be affected by mitigating circumstances.

An attempt to commit any offense shall be a misconduct of the same class as the actual offense. "Attempt" is defined as behavior that, if permitted to proceed to its logical conclusion, would have resulted in an offense.

The disciplinary hearing officer may impose sanctions that include:
- Dismissal of any or all charges and counseling.
- Reprimand and counseling.
- Loss of privileges (up to thirty (30) days for each incident)
- Segregation (up to thirty (30) days for each incident)
- Restitution.
- Suspension of execution of any sanction imposed.
- Recommendation for criminal prosecution.

A sanction of disciplinary segregation, whether in your cell or in a disciplinary segregation area (as a result of housing unit action, informal resolution or disciplinary hearing officer action) includes the denial of participation in activities with the general population.

## APPEAL PROCESS

Inmates are entitled to file an appeal within 72 hours of the Hearing Officer's or Disciplinary Board's decision if he/she reasonably believes that:

1. There was a lack of substantial compliance with the facility standards on inmate discipline.
2. There was an absence of substantial evidence or the sanction imposed was disproportionate to the offense.
3. The procedures employed were contrary to law, inmate handbook policy, Pa. Minimum Standards or Prison Rules.

Once the Appeal Officer receives the inmate appeal form, an investigation will be conducted to make a determination of whether the inmate has offered new evidence. The Appeal Officer will review all evidence presented at the Disciplinary Hearing and any new information given by the inmate through his/her appeal. The Appeal Officer, a Captain, affirms, reverses or commutes the decision of the Disciplinary Hearing Officer or Disciplinary Board. After a decision has been rendered, a copy of the final disposition will be forwarded to the inmate filing the appeal

**INFORMAL RESOLUTIONS**

Class III offenses and Class II offenses (with the approval of the shift commander) may be subject to Informal Resolution. Informal Resolution is a process where the officer issuing the citation and the housing unit supervisor (block sergeant) collaborate to impose the appropriate sanction(s). The offender must agree to accept Informal Resolution prior to being informed of the sanctions, and in so doing will waive his/her right to a Disciplinary Hearing and appeal in writing. If Informal Resolution is rejected by the offender, the citation will be forwarded to the Hearing Officer with a notation stating that Informal Resolution was offered, but rejected.

When a disciplinary matter cannot be resolved through housing unit action, you will receive a misconduct citation.

It is the joint responsibility of the citing officer and a supervisor to determine whether you will be offered the option of an informal resolution, and if ordered, what sanctions will be applied. An informal resolution may result in the:
- Loss of privileges (up to thirteen (13) days for Class I, up to five (5) days for Class II and up to three (3) days for Class III
- Disciplinary confinement (up to thirteen (13) days for Class I, up to five (5) days for Class II and up to three (3) days for Class III misconducts
- Restitution for damaged prison property (if you request to forego a formal disciplinary hearing and complete a request to release your funds   for the damages

.When misconduct is informally resolved, you may be kept in your housing unit or moved to a more restricted housing unit. Misconducts resolved through the informal resolution process are not reported to probation/parole authorities.

**DISCIPLINARY HEARINGS**

In some disciplinary situations, you may be provided a hearing before a disciplinary hearing officer. The disciplinary hearing officer is a member of the prison staff who has had no direct involvement in the incident that is to be reviewed. When a formal misconduct citation is filed against you, you may be moved to a disciplinary segregation area and placed into pre-disciplinary administrative segregation. When a misconduct citation is referred to the disciplinary hearing officer, the below listed guidelines will be applied:
- You will be informed of the offense(s) in writing.
- You will have an opportunity to present a defense.
- The hearing will be held before a disciplinary hearing officer, who is impartial.
- At the hearing, you have the right to remain silent.
- You may admit, deny or otherwise explain the incident for which you are cited.
- You may be present during the findings, unless you become disruptive.
- Findings shall be expressed in writing based on the information presented and findings of guilt shall state the reasons and sanctions imposed.

- Harassment By Words, words, gestures or actions intended to annoy or alarm another person, or by communication to submit a request, complaint, etc., in writing or verbally to more than one employee regarding the same issue; to the same employee, repeatedly, regarding the same issue; or to any employee without mentioning that the issue has already been answered by another employee when that is the case.
- Misrepresentation, lying or otherwise misrepresenting the facts.
- Housing Unit Rule Violations, repeated or flagrant failure to obey housing unit rules.

## Class III Offenses

These offenses are violations that may require a disciplinary hearing prior to imposition of sanctions, or be informally resolved, or be handled by housing unit action.

When referred to the hearing officer, any of the sanctions up to and including ten (10) days segregation may be imposed for each infraction. When resolved through an informal resolution, sanctions not to exceed three (3) days segregation may be imposed. When handled by housing unit action, sanctions up to eight (8) hours confinement may be imposed.

- Cell Inspection, failure to comply with standards for the maintenance of a living area.
- Littering, depositing trash, etc., in a place other that the appropriate containers.
- Safety, failure to follow posted or verbally ordered safety regulations or standards or to injure or place others in jeopardy of injury.
- Unsanitary Hygiene, failure to follow standard personal cleanliness and sanitation, including one's cell.
- Housing Unit Rule Violation, failure to comply with any of the housing unit regulations listed in this handbook or posted in the housing unit.

## MISCONDUCT CITATIONS

When a disciplinary matter cannot be resolved through other means, a staff member will issue you a "misconduct". You will receive a copy of the misconduct report within twenty-four hours of a violation being brought to the attention of staff, or upon completion of an investigation. Staff will acknowledge your receipt of the citation/misconduct.

The prohibited acts listed in the schedule of misconducts are graded into three general classes based on the severity of the offense: Class I, II and III. Each offense is identified by an offense number and descriptive label and is listed under the highest class that can be charged for that offense.

An offense which is not listed in the schedule of misconducts is cited as a Class I offense, "OTHER PROVISIONS"

A sanction involving a loss of privileges may include loss of commissary, phone, yard time, indoor recreation, etc. (but not exercise itself).

- Sexual misconduct, to include, but not limited to kissing, fondling, exhibitionism or performance of any sexual act.
- Sexual Harassment, includes, but is not limited to; unwelcome sexual advances, requests for sexual favors and other verbal, non-verbal or physical conduct of a sexual nature that is intimidating, hostile or offensive.
- Restricted area, being in an unauthorized location.
- Any violation of the Penal Code.
- Tattooing/Tattoo Removal, receiving, performing or assisting in tattooing or tattoo removal.
- Count, interference with or failure to be present for population counts.
- Refusal of Orders or refusal to comply with the directions of staff.
- Contraband, any item or article possessed by individuals or found on prison property, which is declared illegal or not specifically approved for staff or inmate possession; OR an approved item or article not being used as intended; OR altered from its original condition; OR in excess amounts; OR items belonging to another found in your possession.
- Threats, threatening others with bodily harm or other reprisals.
- Destroying, defacing, damaging property.
- Failure to provide specimens for drug or medical testing.
- Interfering with the duties of a staff member or volunteer.
- OTHER PROVISIONS, violation of any rule or provision enumerated elsewhere in this handbook or of written, posted or verbal orders/regulations/notices not specifically enumerated in this misconduct section.

**Class II Offenses**

These offenses are violations that may require a disciplinary hearing prior to imposition of sanctions, or be informally resolved, or be handled by housing unit action. When referred to the hearing officer, any of the sanctions, up to and including a maximum of twenty (20) days segregation, may be imposed for each infraction. When resolved through an informal resolution, sanctions not to exceed seven (7) days of segregation may be imposed. When handled by housing unit action, sanctions up to twenty four (24) hours confinement may be imposed.

Class II Offenses that may require a disciplinary hearing prior to imposition of sanctions or be informally resolved include:

- "Transfer", of property from one inmate to another (include selling, lending, etc.).
- Uncooperativeness, including but not limited to failure to comply with the admission/orientation process for classification/movement.

Class II Offenses that may require a disciplinary hearing prior to imposition of sanctions, or be informally resolved, or be handled by housing unit action include:

- Excessive noise or horseplay.
- Abusiveness, profane, obscene, or otherwise demeaning speech, gestures, correspondence or actions.
- Disturbance, speech actions that interfere with, interrupt or cause the disruption of normal prison routine, proceedings or order.

Revised 12-2008                                      29

## IX.    DISCIPLINARY PROCEDURE

The inmate disciplinary system is designed to maintain control, protect staff and inmates and promote socially desirable behavior. This is accomplished through the enforcement of the rules of conduct, application of established consequences for misconduct, and hearing procedures that include due process requirements. Standard rules of conduct include, but are not limited to, the schedule of misconducts, housing unit regulations and posted orders. The three levels of disciplinary enforcement are:

- Housing unit action sanctions.
- Informal resolutions.
- Disciplinary hearings before the disciplinary hearing officer.

## SCHEDULE OF MISCONDUCTS

The following is a list of acts which are prohibited in the prison and which are the basis for misconducts. Sanctions applied in disciplinary actions are related to the severity of the offense. An attempt to commit any violation of rules, regulations, orders, etc., will be considered to be and cited as an actual violation thereof:

### Class I Offenses

These offenses are severe violations that will require a disciplinary hearing prior to imposition of sanctions or be informally resolved. When referred to the hearing officer, any sanctions up to and including thirty (30) days segregation may be imposed for each offense.

Class I Offenses that require a disciplinary hearing prior to imposition of sanctions include:

- Arson.
- Bribery, to include giving or offering any staff member a bribe or anything of value.
- Conspiracies, encouraging, facilitating or conspiring with others to commit any prohibited act.
- Controlled Substance Abuse, using, possessing, manufacturing or being under the influence of alcohol, drugs or narcotics, volatile substances, or any other controlled substance.
- Escape, attempting to escape, or planning to escape including failure to return from an approved community activity in a timely manner.
- Extortion, demanding or receiving money or anything of value in return for protection, to avoid bodily harm or under threat of informing.
- Kidnapping, taking hostage or holding another against their will.
- Rioting/Inciting to Riot, to include encouraging other to riot.
- Theft, to include receipt of stolen property.
- Self - Mutilation, done for manipulative purpose rather than as a result of established mental illness.
- Program Rule Violation, failure to conform to signed program agreements for work release, etc.
- Tobacco Usage, use of tobacco and tobacco products is prohibited at all times, by inmates, in all areas of the prison and while participating in any prison program.
- Assault or fighting.

- The sharing of telephone calls is not permitted and only one inmate per telephone
- Upon completion of your telephone call, you must hang-up the receiver; you are not permitted to "hand-off" to one another.
- Staff telephones are not authorized for your use.
- Handicap accessible telephones are available upon needed request.
- Violation of telephone privileges is misconduct.

**Televisions**
- Televisions will be maintained at a reasonable volume level and will be controlled entirely by the housing unit officer.
- Televisions will not be authorized during counts, meals, etc.
- You are not permitted to place your feet on seats or on the tables.
- You are not permitted to sit on the dayroom floor.

**Movement**
- You may not leave the housing unit unless approved by your housing unit officer.
- You are to keep in the center of the corridors and travel in a quiet and orderly manner with no loitering, conversation or stopping during any movement.
- When you are in a group, you will walk in a single file and will stay in front of the escorting officer at all times.
- You may be searched when leaving or entering your housing unit.

- You are required to pick up after yourself.
- You are not to congregate around the control room for any reason. If the officer is at the control desk, you should approach her/him one at a time.
- You are not to throw any items in the housing unit.
- You are not to loiter, sit on stairs or tabletops.
- You are not permitted to approach prison administrators or other visitors, unless they request to see you; do not ask housing unit officers to see them, all requests must be in written form only.
- **You do not have the right to see a supervisor on demand**

## Dress Code

You must always be fully and properly clothed. The term prison issued "uniform" consist of both a "shirt and pant and proper foot wear" type dress. If you are authorized to leave your housing unit by the officer, e.g. visiting, programming, etc., you must be clothed in either type of prison issued uniform dress, to include socks, and shoes. Your prison issued uniform is always an acceptable form of dress.

- Nothing may be worn over the "uniform" other than approved outerwear
- Pant legs cannot be "pegged", although you are allowed to roll up both pant legs that are too long.
- Walking on pant legs or other abusiveness of prison issued uniform/property is prohibited and if any damage is done, you will be required to pay for repair or replacement cost.
- Pants must be worn on the waist, no sagging, no underwear is to be showing and hands are to stay out of pants.
- Prison issued or commissary purchased clothing may not be altered; e.g. sleeves torn, cuffs or necks removed, etc.
- Uniforms must be worn in their entirety.
- Nothing may be worn on the head or attached to your hair; except approved religious headwear in your cell or approved yard headgear.

## Telephones

- Telephone calls are collect and limited to ten (10) minutes.
- You will be required to record your voice; stating your name.
- Telephones are available during dayroom free time only and are generally made available to you after a satisfactory report on housing unit inspections
- Telephone access is restricted if you are in some forms of segregation.
- You must refrain from using loud, threatening, profane or abusive language.
- Inmates in general population may make phone calls in accordance with 66 Pa.C.S. § 2907 (relating to state correctional institutions) and the *Department of Corrections Inmate Handbook*. Phone calls, except confidential communications between attorneys and inmates, will be subject to monitoring in accordance with 18 Pa.C.S. § 5704 (relating to exceptions to prohibition of interception and disclosure of communications).
- No calls to pay telephones, overseas, or 800/900 area codes.
- No calling cards, credit cards or third party calls.
- No incoming calls.
- No conference calls.

Revised 12-2008                                        26

**Cell Inspections**

Upon arrival on a housing unit, you will inspect your assigned cell. It is strongly suggested that you inspect your cell upon entering and report any damage immediately to the correctional officer because you will be held responsible for the condition and contents of your cell. You will be charged, according to a replacement rate, for any and all damage to your cell, furniture, fixtures, etc., within. If you are double celled, you and your cellmate will be held equally responsible.

Cleanliness and orderliness of cells include:

- You are assigned a specific cell by staff. You must only enter your own cell.
- Your cell will be locked at all times.
- Your cell intercom is only for response to the housing unit officer when requested or in an emergency situation.
- All vents in your cell and housing unit must remain uncovered and clean.
- Tampering with any lock, locking device or control is prohibited.
- Beds are to be made each day and cells cleaned before activities begin. (Your bed will remain made throughout the day. If you wish to use your bed, you must remake it each time you vacate it)
- Mattress, pillow and blanket must be on your bunk.
- Storage bins must be under bunks (You are not permitted to stand or sit on storage bin)
- Nothing is to be on the floor, except footwear and storage bin.
- Property must be neatly organized and neatly displayed.
- Cell floor and immediate floor area in front of your assigned cell is your responsibility and will be swept and mopped.
- Doors, walls, ceilings, windows and furniture are to be free of signs, posters or other hangings. (Items may not be wedged into the shelf, desk, mirror, etc.)
- Walls, furnishings, other prison surfaces, etc., are not written upon or defaced in any manner.
- Light fixtures, bars, stainless steel toilet, sink, etc. are to be kept clean.
- No contraband in cell!

**Counts**

- During any "count", ordered by your housing unit officer, you will be required to cease all of your activities.
- If not in your assigned cell, you will go there and lock yourself in.
- The housing unit officer must visually identify you.
- You must remain quiet during all counts.
- You must remain in your cell until notified by the housing unit officer.
- Violations of these requirements will be considered a severe rule violation.

**Dayroom Rules**

- You must obey any order of any staff member!
- Loud talking, shouting, whistling, singing or any other form of boisterous behavior is prohibited.
- Games are to be played so as not to create excessive noise for others in the dayroom. No card slapping and no bystanders standing around game tables.

## VIII.   RULES AND REGULATIONS

### HOUSING UNIT REGULATIONS

Housing units are to be maintained in a safe, secure and clean condition at all times. All rules posted in the housing units and those listed below are to be obeyed:

### Issued and Allowable Property

There is a specific amount of allowable items, whether authorized for issue or purchase, which you may keep in your possession. (See Posting)

- The prison issues clothing, bedding, footwear, rulebook and a storage bin.
- You will also receive a "starter kit" containing toothbrush, toothpaste, soap/shampoo, etc.
- All of your issued clothing may not be marked or altered in any way by you.
- All of your issued items must remain in your possession during your period of confinement.
- You may not sell, trade, give or transfer personal possessions, commissary items or county property which were issued, sold or given to you, to any other inmate.
- You will be held accountable for the return of all prison issued property in the same condition as received during admission; except for undergarments, socks and starter kit supplies.
- You will be charged for any damage, loss or destruction of issued property.

### Disposition of Personal Property

Items of personal property that are permitted in the prison will be returned to you.

Items of personal property that are not allowed inside the prison will be inventoried and placed in the property room; e.g. clothing, keys, wallets, jewelry, etc. You will be given a receipt for all articles turned over to staff. You and a staff member will verify the accuracy of the receipts and acknowledge this fact with your signature. You will be permitted to keep only one (1) change of personal clothing in storage at the prison. This personal clothing will be kept in storage until the time of your eventual discharge/parole. Items in excess of these amounts must be sent out of the prison.

- You will be required to remove your excessive personal property, received upon admission, within thirty (30) days of your commitment.
- You will be required to remove your excessive personal property, accumulated during your incarceration, e.g. books, on a regular basis.

### Searches

You, your cell and your belongings are subject to a full search at any time. This may include the dismantling of items in your possession or areas controlled by you. It may also include a full body search, requiring you to completely disrobe. Your presence during cell searches is not a legal requirement. You will be held accountable for any contraband, or damage to prison property, discovered when a search is made. You are responsible to cooperate with staff during the procedure.

Internal examination, body cavity search, is conducted only by authorized medical personnel. You may be detained, under observation, until arrangements can be made for such a search.

- Disciplinary Segregation:  A designated place used for housing inmates who require a higher degree of behavior control because they have been found guilty of committing a serious rule violation(s); or for those who continue to pose a threat to self, others, or prison security; or for those who continue to be involved in misconducts while in restrictive housing.

Categories of Disciplinary Segregation:
- Restrictive Housing – Segregation for those who have been ordered into segregation for rule violation(s).
- Special Housing – Segregation for those who continue to pose a threat to self, others or prison security; or who continue to be involved in misconducts while in restrictive housing.

During your stay at the prison, you are expected to follow all rules, regulations, orders, postings and directions of staff. It is important that you familiarize yourself with all rules, etc. because your housing unit officer, a supervisor or the disciplinary hearing officer, may discipline you. In any case, the resulting sanction may include segregation.

If you are placed into disciplinary segregation you will continue to be expected to abide by all the rules and policies of the prison. In addition, some or all of the following restrictions or limitations may be placed upon you:
- Your use of clothing, mattress, blankets and pillow may be restricted by order when the deprivation is necessary as a result of your behavior or condition.
- Showers will be offered daily, but are required three times each, unless otherwise directed.
- Meals will be standard ration form the daily menu. If you use food, utensils or other meal related items to disrupt prison operations; you may be served formulated meals (food loaf), which is nutritionally equivalent to the meals served other inmates.
- Medical, laundry and other services will be provided on the housing unit, or in your cell when required by circumstances.
- Visitation privileges will be restricted dependent on your custody level.
- You will not be permitted use of the collect call telephones or televisions.
- Commissary privileges will be permitted but they are limited to a restricted list of items.
- There is a specific amount of allowable items that you may possess or keep in your possession/cell.
- Counseling, religious and other services may be provided on a limited basis.
- Legal library materials are available to you. To request Law Library time, you need to complete a request form addressed to the "Block Supervisor".
- Exercise will be out of cell, outdoors, no less than one hour, seven times each week controlled by the housing unit officer and may be denied by the Prison administration for medical, mental health, environmental or security reasons.

**Administrative Segregation**:  A designed place used for housing inmates who require a higher degree of protective care and custodial management. It is not necessarily a punitive status, but is designed to provide stringent custodial control and surveillance over those inmates who cannot be housed in general population.

Categories of Administrative Segregation:
- Pre-hearing confinement- Awaiting a Disciplinary Hearing
- Medical – Segregation for those whose physical health requires close monitoring.
- Mental Health – Segregation for those whose mental health requires close monitoring.
- Protective Custody – Segregation for protection from another inmate or group of inmates (You may request this status or be placed into it by staff)
- Security – Segregation for those who present a risk of escape or to control an inmate's behavior or to safeguard the inmate or others.
- Isolation – Segregation for those who engage in conduct that involves a repeated failure to obey orders from correctional staff; verbal harassment of correctional staff or other inmates; disrespectful language or other language which creates a risk of a disturbance; or other disruptive conduct that does not pose an immediate risk of physical violence but which poses a serious risk to the prison's security and good order.

Assignment to administrative segregation occurs through written approval processed through the Prison Administration, medical department or disciplinary hearing committee. Similarly, release from segregation can occur upon recommendation of the inmate review committee. When immediate segregation is needed, the officer-in-charge may issue a verbal order. The inmate review committee reviews the classification status of each inmate in Administrative Segregation, and Disciplinary Segregation on a regular basis.

If you are placed in administrative segregation, you are expected to abide by all the rules and policies of the prison. In addition, some or all of the following restrictions or limitations may be placed upon you:
- Your use of clothing, mattress, blankets and pillow may be restricted when deprivation is necessary as a result of your behavior or condition.
- Showers will be offered daily, but are required three times each week (Monday, Wednesday and Friday), unless otherwise directed.
- Meals will be the standard ration from the daily menu. If you use food, utensils or other meal related items to disrupt prison operations, you may be served formulated meals (food loaf), which is nutritionally equivalent to the meals served other inmates.
- Medical, laundry and other services will be provided on the housing unit or in your cell when required by circumstances.
- Visitation privileges will not be restricted, dependent on classification level.
- Limitations on commissary items may be imposed upon you for medical or security reasons.
- Treatment services, religious counseling, etc., may be provided as approved by the officer-in-charge.
- Outdoor exercise will be provided, controlled by the housing unit officer and may be denied by the warden/deputy warden of security for medical, mental health, environmental or security reasons.
- Inmates in pre-disciplinary administrative segregation will not be permitted the use of telephones.

## VI.   CLASSIFICATION

**GENERAL INFORMATION**

The Classification System is a process applied equally to all inmates that combines legal elements and behavioral characteristics to determine institutional placement, the provision of services and eligibility for programming, and mental health needs.

You are not classified to a more secure custody level than your potential risk factor warrants. Your classification is based on a number of criteria, which includes but is not limited to:
- Reports from law enforcement agencies.
- Assessment of current charges.
- Observed medical or mental health problems.
- Records of prior incarcerations.
- Adjudication status.
- Program participation.

Based on a review of all available information, during the "evaluative classification", the Classification Committee determines your initial classification status. In some cases, generally involving medical, mental health or behavioral problems, you can be placed into administrative segregation.

The housing unit assignments include the following security classifications:
- Minimum
- Medium
- Maximum
- Segregation

**RECLASSIFICATION**

A process that reviews your security and custody levels necessitated for various reasons e.g., institutional behavior, changes in legal status, and request by legal authorities, your requests, etc. A change in your classification status may occur at any time and may result in a new housing assignment. If you feel you have a reason to appeal a classification decision, you may submit a written reason to the "block counselor" for reconsideration. The Inmate Classification Committee is a multi-functional team of staff members who meet on a regular basis to review the status of inmate housing in the facility.

**CLASSIFICATION OVERRIDE**

At the time of classification, the classification committee, the shift officer-in-charge or prison administrator, can override the classification result by written justification.

**SEGREGATION/RESTRICTIVE HOUSING**

Segregation/Restrictive Housing: Is the term used to mean the confinement of an inmate to individual housing that is separate from the general population, i.e. restrictive housing units/RHU, medical observation cells, isolation rooms/cells or other areas so designated for this purpose. There are two forms of segregation: Administrative and Disciplinary.

Revised 12-2008                           21

release program is not a right, rather a privilege. Once all of the general guidelines for work release eligibility have been satisfied, you must receive approval from your sentencing judge.

While in the work release program, you will be responsible to pay a housing fee to the prison and any other mandatory deductions for cost, fines, support, etc.

You are encouraged to responsibly prepare for eventual release into the community and staff will monitor your attendance, performance and behavior while in the program.

## RECOMMENDATIONS TO THE COURTS/PAROLE AUTHORITIES

In all cases where parole is to be considered, State and County Adult Probation and Parole Departments will consult with the Chester County Prison Treatment Department, whom may provide relevant information concerning the parole decision.
Considerations must be given to at least the following factors:

- The nature of the offense.
- Prison performance, to include misconducts.
- Suitability of a parole plan.
- The completion of special programming, including but not limited to drug/alcohol treatment and other appropriate services.
- Special circumstances of the inmate.
- The impact of the victim and the level of risk posed to the community.
- If you are sentenced, be advised that in all probability that you will have to provide to Chester County Adult Probation an approved verifiable address approximately six weeks before your expected discharge date. Failure/inability to do so may result in your request for parole not being approved.  Your counselor will be able to provide some assistance, but remember; this ultimately is your responsibility.

Prison staff members and volunteers are not permitted to provide recommendations on your behalf to court authorities. The prison's "Treatment Department" with the approval of the Warden, Deputy Wardens, or Director of Inmate Services is the only staff approved to process these recommendations!

Revised 12-2008                                         20

**INSTITUTIONAL JOBS**
Work assignments are made after considering your classification, physical ability, adjustment records, prior employment, skills, training, and length of incarceration and the needs of the prison. Many job assignments are paid and have a specific rate of pay.

Participation in treatment programs while you are employed is encouraged. Sentenced inmates must accept job assignments. By accepting a job, you agree to perform all tasks assigned to you, and to follow all directions of staff, or be sanctioned accordingly.

The Inmate Classification Committee or disciplinary hearing officer may remove you from a job after review. You may be dismissed from a job for a variety of reasons to include:

- Refusal or inability to perform a job assignment.
- Failure to cooperate with a supervisor.
- Verbal abuse of other individuals.
- Violation of job rules, regulations or instructions/poor work performance.
- Medical disqualifications.

If you are cited with misconduct, you will be replaced on your job assignment until the disciplinary hearing officer makes final disposition of your case. You may be suspended from your job pending the disposition of your case.

It must be mentioned that if you are placed in a job assignment, and perform up to expectations, you will be given a favorable progress report to the judge.

**WORK RELEASE**
The work release program provides an opportunity for you to become employed.

All persons sentenced to a maximum term of less than five years at Chester County Prison are eligible to apply for participation in the program. Those persons with detainers lodged against them and those with open charges will be excluded from the program until detainers or charges are disposed of by the proper authorities. The application that you submit is reviewed by the Treatment, Medical and Security Departments of Chester County Prison. These departments evaluate your conduct and performance at Chester County Prison and make recommendations as to your suitability and adaptability to the program. The recommendations made by the Treatment and Security Departments are given serious consideration when a person is accepted or denied for the program.

In order to be considered for the work release program, you must meet all the selection criteria. Additionally, your eligibility for work release is further restricted dependent upon your offense type and status. The general guidelines for work release eligibility are available in from your assigned correctional counselor.

If you are determined to be eligible for this program, you will be required to sign an "agreement". Your signature indicates you have read and understand the agreement and will abide by all the rules and regulations of the program. You may be removed from the program at anytime for violating this agreement or any program rule/regulation. Assignment to the work

## V.    PROGRAMS

### ELIGIBILITY

Eligibility for programs is dependant upon your classification and programming needs. Usually, if you are housed in "Minimum Security", you are eligible for most programs. If you are assigned to maximum or restrictive housing, your program access is limited to those programs that take place on the housing unit.

All inmate programs are coordinated through the programming department. There are a variety of education and treatment program services. Your participation (or refusal to participate) in recommended programs will also be reported to judges and/or parole authorities.

Primary treatment services include case management, crisis counseling, individual counseling, and drug and alcohol classes. You may contact your assigned counselor directly, or in writing on a request form, regarding information on specific counseling.

Frivolous or unfounded requests, communications, complaints, grievances, etc., constitutes disruption and is not the type of behavior that would warrant a favorable recommendation for program placement and/or parole.

### EDUCATION

There are a variety of educational programs available to you. They include, but are not limited to:

- GED (General Educational Development) This course provides you with instruction practice and review to prepare for the GED test.
- ABE (Adult Basic Education) This course provides you with reading, math instruction if you are working below the GED level.
- ALTERNATIVE EDUCATION – This is a public education class that will enable you to earn credits toward a regular high school diploma. These classes are for those under the age of twenty-one.

### RELIGION

Religious programs are available to accommodate the beliefs of most major faith groups. Religious programming includes formal worship services, religious study groups and special events. At the time of commitment, you must declare a religious belief or non-belief.

Participation in religious services and programs is strictly voluntary. Just as you have the right to practice religion, with those restrictions necessary to maintain institutional security and order; you also have a right not to be subjected to any religious activity against your wishes.

The Chaplain, religious advisors and groups will involve themselves in matters that directly relate to the religious portion of your life while confined. They will not become directly involved in sentence computations, liaisons with staff member, etc.

You are required to sign a "money slip" form for payable medical services. If you refuse to sign the form, the medical staff will initial the form and any appropriate fee will be deducted from your account.

***You will never be refused medical treatment because you lack funds!***

If you intentionally injure yourself or any other person while in prison or falsify a medical emergency, you may not only be charged with an offense, but held financially responsible as well.

## COUNTY PROPERTY

You will be responsible for making full restitution for any property, which you damage, lose or destroy. This restitution is in addition to any disciplinary or criminal charges lodged against you.

All property issued to you by prison staff must be returned at the time of your discharge. You will be held financially responsible for any items that are lost, missing or damaged.

## IV.    FINANCES

**FINANCIAL TRANSACTIONS**

The prison maintains a financial account for you and is primarily intended for internal use. Deductions from your account will only be authorized to provide for routine commissary purchases, restitution for damages, co-payment for medical, photocopies, haircuts, etc. Funds from your account to be sent outside the prison will be processed as to their "legitimacy". (See Posting)

You may receive funds through the mail. Funds received in the mail must be in the form of cashier check, certified check or money order only. Personal checks, government checks, payroll checks and cash will not be accepted. They will be considered contraband and "Return to Sender". The prison will not be held responsible.

You may receive money orders from friends and/or relatives delivered to the lobby/visiting entrance. Money orders are accepted Monday through Fridays, except holidays, during posted times.

Financial transactions of any kind between inmates or between inmates and staff are prohibited.

**FINANCIAL RESPONSIBILITY/BILLING SERVICES**

You are required to assume responsibility for a number of financial fees during your stay. The payment system is specifically designed so that it does not impose an undue hardship upon you.

Staff will complete forms for all fees assessed to you. All fees will be deducted in full when possible, from your account. If necessary, a negative balance will be applied to your account. The conditions for collection of money when a negative account exists are:

- At discharge, all available funds from your account will be credited toward any negative balance prior to issuing you a discharge check.
- Negative balances remaining after discharge will be maintained on your permanent record.
- If at any time you are recommitted to the prison, any past negative balances will be applied to your current account.

**CO-PAYMENT FOR MEDICAL SERVICES**

You will be required to pay for some medical services as determined by the administrator of the medical department.

There is no charge for the medical services listed below:

- Admission physical screening (If you are not referred to the doctor as a result of screening by the nursing staff, but you request to see the doctor anyway, you will be charged a fee for this service)
- Dental screening.
- Mental health screening.
- Medical emergencies (Not all accidents qualify as emergencies, e.g. twisted ankle from activities in the recreation yard is not an emergency and is a fee situation, treatment required as a result of activity in violation of prison policy is a fee situation, etc.)

Revised 12-2008                               16

If you are unable to afford a private attorney, you are eligible for services of a public defender. You may request to see an investigator via request to your block counselor. The investigator will be responsible to interview you to determine if you are eligible for assistance.

For preparation of legal correspondence, paper and other miscellaneous materials may be purchased through the commissary.

If you are committed as an illegal alien, the Prison allows access to legal resources relating to immigration law and detainee rights.

**NOTARY**
Certain legal documents need to be notarized. The prison offers the service of a Notary Public. These services are applicable to all laws. Reasonable access will be afforded during the day shift on Monday through Friday. You are required to submit a request to the notary public with a brief description of the document(s) to be notarized. Once the documents have been received, the notary public will meet with you and if deemed appropriate, the documents shall be notarized and returned to you. Handwritten, self-made documents will not be notarized and decisions of the notary are final.

**HAIR CARE**
All requests for haircuts will be directed to the Barber Shop Coordinator on the appropriate form. Barber services will provide haircuts only and no other services will be provided, i.e. shampoos, permanents, coloring, etc. It is the discretion of the barber to refuse to cut your hair due to unclean-ness, uncooperativeness or improper conduct at the time of the haircut.

**VOTER REGISTRATION & ABSENTEE BALLOT**
The following individuals may register and vote if they have been citizens of the United States for at least one month before the next election; have been residents of Pennsylvania and their respective election districts for at least 30 days before the next election; and will be at least 18 years of age on the day of the next election.
Pretrial Detainees (individuals who are confined in a penal institution awaiting trial on charges of a felony or a misdemeanor).
Convicted Misdemeanants (individuals who are confined in a penal institution for conviction of a misdemeanor only).

Revised 12-2008                          15

your mouth for inspection. (Medical staff will examine your mouth and cup to insure compliance) Failure to comply with this procedure will result in disciplinary action. A qualified mental health provider will only dispense psychotropic medications after an assessment.

The medical department will maintain a supply of over-the-counter drugs and issue appropriate quantities to you, if deemed necessary for treatment. Over-the-counter medication is also available through the commissary and can be purchased at the prevailing rate.

When the nurse arrives with the "med cart" you are to follow the orders of the housing unit officer.

## SUICIDE PREVENTION
If your cellmate or acquaintance was talking to you about suicide, you would probably take action and talk with a staff member to help him/her. Most people would, because they would want someone to help them, if the tables were turned. Wouldn't it also be helpful to know the signs of suicide risk, in the event that your cellmate couldn't or wouldn't tell you about suicide, but is at risk, just the same? These signs of increased suicide risk that may help you identify when a person is having difficulties and encourage you to do the right thing by alerting staff. Signs of increased risk include: giving away property, having a difficult time sleeping, saying that no one cares about them, feeling hopeless, feeling helpless, believing that people are trying to harm them, feeling sad or depressed for days or weeks, hearing voices when no one is around, and loss of appetite. The more of these signs that are present the higher the likelihood that a person is thinking about suicide. If you notice these signs in your cellmate, it is ok to ask them if they are thinking of suicide and to let a staff member know if the person is having difficulty.

## LIBRARY
General purpose, fiction and non-fiction library books are available for your use. The library books will be rotated among the housing units on a monthly basis.

To enable you to exercise your rights of access to the courts, you shall be permitted access to legal resources. The law library contains legal research materials, statutory and case law, available for your use. A listing is posted in the library and on the restricted housing units.

While in general population housing units, the law library is available for your use according to the posted schedule. While you are housed in a restrictive housing unit or maximum security, you may be given access to the law library by way of a "request slip" at specific times.
(See Posting)
If you write in or otherwise deface or damage library materials, you will receive misconduct and be required to reimburse the prison for any damages.

## LEGAL ASSISTANCE
The only individuals who are entitled to collect a fee from you for legal services are licensed practicing attorneys or legal service agencies. It is a rule violation for you to pay or accept payment from another inmate for legal advice or assistance.

Revised 12-2008                              14

excessive amount of commissary items. If you refuse to accept your commissary after you had already ordered it, it will still be deducted from your account.

Commissary items are delivered in clear plastic bags allowing visual inspection of the contents. You must verify the contents before opening the bag. In order to claim an error or a defective product, the portion of the bag containing the product items must be opened in the presence of a commissary clerk. You need to have the commissary clerk verify with their signature, on the order form, that there was an error. Corrections for errors will be made on the next commissary date.

At the time of discharge, if you have ordered and not received commissary items, a credit for that amount will be applied to your account and if all of your financial obligations have been met, a check will be sent to you at the address you have provided at the time of discharge.

## HEALTH CARE

During your first forty-eight (48) hours of confinement, you will receive a health assessment to determine your health care needs. The process will include an interview, observations, various tests, etc., in order to obtain a certain medical classification. It is to your advantage to be truthful and inform medical staff of any chronic illness, allergies, medications, prior surgeries, etc. If you are withdrawing from drugs or have an alcohol problem, request assistance.

All information concerning your medical status will be considered confidential.

You may be requested to authorize, in writing, the prison medical department to obtain medical information from hospitals, doctors, etc., who have treated you in the past.

If you require medical, dental or eye care, you may request this at "sick call". These services are provided according to a treatment plan that in the doctor's judgment is necessary.

## Sick Call

If you want to be seen by the medical staff, you should fill out a medical request form that is provided on your housing unit. On the form, you must provide some indication as to your reason for seeking medical assistance.

All medical emergency situations must be brought to the immediate attention of either your housing unit officer or the nearest available staff member.

## Medications

If you are taking medications when you are committed to the prison, the medications may be discontinued until the medical department can verify the prescription, and the prison physician can review it. Upon review the prison physician will determine the pharmacological treatment plan that in his/her judgment is necessary for your medical condition(s).

You are required to consume prescription medication in the presence of medical personnel. It is your responsibility to make yourself available when "med cart" has been announced. You will be required to take your medication with water, after swallowing the medication; you will open

## III.    SERVICES

**FOOD SERVICE**
You will be provided three meals daily with food of nutritional value. It will be your responsibility to make sure you are available for all meals (See Posting)

All meals will be required to be eaten in the dayroom of your housing unit, unless you are housed in an administrative lock-down or a restricted housing unit.

**Meals**
- Housing unit officers will be responsible to "set-up" and supervise all meal services
- Approach the line single file, one direction only
- You will take one (1) meal tray, not skipping a tray
- Beverages will be placed in a prison issued cup only
- You are not to pass in line or between tables
- You are not to pass your food or beverage to another
- You are not to pass supplemental foods, i.e. diets, bagged lunches, etc. to another
- You are to fill each assigned table in succession, no saving seats, moving from one table to another, etc.
- You will only be authorized one trip through the meal line; there will be no extras
- Quiet conversation only will be permitted during mealtime
- After everyone has been served, you will be held accountable to return your tray to the area designed, not in the garbage.
- You are not permitted to take any food back to your cell
- You will dispose of all uneaten food, waste materials, paper, etc., in the garbage container provided (insure that the garbage bag is secured tightly to the garbage can)
- You will proceed directly back to your cell and "lock-up"
- After everyone has "locked-up", assigned workers will clean tables, floors, etc.
- When the housing unit is cleaned to the satisfaction of the housing unit officer, normal operations/activities will resume

**COMMISSARY**
The commissary offers supplemental supplies for your purchase. There are limitations on your purchases. Further restriction or denial of commissary may occur depending upon classification and housing assignment.

The schedule for commissary is posted and there are no exceptions to this schedule. A weekly limit on purchases is enforced. Funds for commissary purchases must

Be available on your account the day your commissary form is collected from your housing unit. The amount of purchase will be deducted from your account.

Commissary "product order sheets" must be intact and completed properly, to include your signature. Your commissary will be rejected and returned to you if you have improperly completed the product order sheets, or if your account has insufficient funds, or if you order an

Revised 12-2008                                12

Magazines, newspapers, periodicals, books and letters may be restricted and/or limited if the correspondence/material:

- Is a security concern
- Contains instructions for the manufacture of explosives, drugs or other unlawful substances or devices
- Deals with escape, disappearing, etc.
- Advocates violence, in general or within the prison
- Advocates racial, religious or national hatred
- Is contrary to legitimate penology interests
- Contains sexually explicit material or photographs
- Contains stickers, postage stamps or pre-paid stamped envelopes
- Contains musical devices, metal objects, hard substances, food or any other item which is not in pictorial form
- Contains anything that would have to be destroyed to be properly screened
- Contains oversized objects (i.e. larger than 15 by 12 inches)
- Contains third party correspondence
- Contains anything deemed unacceptable by the officer-in-charge
- Contains more than the allowable items permitted in your possession/cell (See Posting)

***All such items will either be confiscated or "returned to sender" (They will not be placed in your property at the prison)***

**Censored Mail**
Your correspondence will be censored when it is approved for delivery to another inmate housed here or at another institution and when there is reasonable suspicion of:

- Plans for criminal activity
- Plans for violation of prison rule
- Threats of prison security or activity

The Warden will issue authorization to censor your mail for reasonable suspicion. You will be notified, unless this censorship is part of a criminal investigation by law enforcement authorities.

**Incoming Mail**
Incoming Mail should be addressed to:

(YOU'RE NAME)  County Number

HOUSING UNIT

Chester County Prison
501 South Wawaset Road
West Chester, Pa. 19382

"Legal Mail" will be opened and inspected for contraband in your presence.

See Financial Transaction Section in this handbook for restrictions of money being sent in the mail.

The prison will not accept COD or postage due mail

All incoming mail must be labeled with your name, County Number and a return address (This is to provide for proof of ownership, contraband, etc.)

**Outgoing Mail**
Outgoing mail must be addressed with your name and Chester County Prison printed legibly on the return address (Commissary provides pre-printed return address envelopes)

No other markings or notations may be made on the envelope of outgoing mail, or it will be returned to you.

If you wish to send registered mail or certified mail, you will be responsible for the cost of any postage.

If you are indigent, you will be provided with material for written correspondence in accord with the indigent policy.

Your mail will be collected daily and forwarded for delivery

**Restricted Correspondence/Limitations**
The Warden will, at the request of a parent/guardian of a minor, terminate your correspondence to that address. Correspondence may be restricted because of security concerns or failure to comply with mail rules and regulations.

The Warden will review requests, made by the Deputy Warden of Security, for restrictions of your mail privileges, and upon reaching a decision, notify you if a restriction is to take place.

Magazines, newspapers, periodicals, books, must be mailed to you directly from the publisher or they will be returned to sender at your cost.

Revised 12-2008                                        10

- Visiting privileges may be restricted or discontinued during extraordinary circumstances.
- Visiting from representatives of government agencies, spiritual/religious advisors, attorney, etc. are not considered "family visitation" and do not affect your regularly scheduled visits.
- If you request a spiritual/religious advisor visit, you must submit a request slip to your counselor stating; your spiritual religious advisor's full name, the name of his/her church, the church address and telephone number. (The spiritual/religious advisor must not be a relative and is required to submit proof of his/her church position and legitimacy. A thorough background check will be completed before clearance is granted for your visit)

## INDIGENT INMATES

If you have less than five (5) dollars in your account and have received no funds in a two-week period, you are considered "indigent" and eligible to receive certain necessities.

You may apply for indigent supplies by completing a request slip to the housing unit counselor.

Items issued will include such items as: 3 envelopes, pencil, soap/shampoo toothbrush/toothpaste, and deodorant. These packets will be issued twice each month.

## MAIL

Access to mail is permitted with those restrictions necessary for security or the good order of the prison. Mail will be inspected for contraband prior to distribution to you and before being forwarded to the U.S. Postal Service. Chester County Prison reserves the right read incoming mail in accordance with Title 37 § 95.234.

When you are discharged or transferred, your mail will be marked "Returned To Sender" and returned to the postal service.

Correspondence of any nature that is considered unacceptable by prison staff will be returned to sender or confiscated.

Inmate to Inmate mail is permissible in the Chester County Prison providing proof of marriage, parentage or blood relationship is proven. Inmate to Inmate correspondence between co-conspirators is prohibited. All authorized mail is subject to being read by security staff and must be submitted in an unsealed envelope.

- A visit consists of three (3) authorized visitors who must enter the visiting area at the same time. Visitors may leave at any time during the visitation time period. Visits will be of thirty (30) minutes duration. Any child of walking age is considered a visitor.
- Inmates are limited to ten (10) names on their visiting list. The visiting list will be completed by the inmate's Counselor.
- Inmates are required to request changes to their visiting list through their Counselor. Changes require a waiting period of thirty (30) days once the list is completed.
- Visitors must show proper identification on their first visit, and have a photograph taken. There is a $ 1.00 charge for the photograph. (Acceptable Identification: Birth Certificate, Social Security Card, School I.D. Card, Driver's License, and Welfare Card).
- All visitors are subject to be searched. Persons refusing to submit a search will be asked to leave the premises. The Person(s) will be instructed to call to make an appointment with the Warden or designee to get approval to visit at a later date.
- **Visitors are not permitted to carry any item into the visiting area. Visitors are not permitted to give money or any item to an inmate. Visitors are required to leave outer garments in the Lobby of the visiting area. Blazers, Sport Coats, Suit Jackets, Warm-up Jackets, "Hoodies" and sweatshirts with zippers, pockets, or pouches are considered outer garments and must be left in the Lobby.** Chester County Prison is not responsible for personal property of visitors.
- **Visitors attired with inappropriately revealing or suggestive clothing (tube, tank or halter tops, see-through clothing, mini-skirts or dresses, clothes that expose the midriff, side or back, clothing with revealing necklines, or excessive splits) will not be permitted to visit.**
- Persons under the influence of alcohol or drugs will not be permitted to visit. If someone is with a person under the influence, they will also have to leave the premises.
- Visits must be conducted in an orderly manner and in accordance with regulations. Visiting privileges will be suspended or revoked for disruptive behavior or violation of visiting rules.
- Adult visitors will be responsible for the behavior of children in their charge. Individuals over the age of sixteen years (16) will be permitted to visit without adult supervision, and will be accountable for their own actions.
- Visiting will start and end promptly at the times shown on the schedule. Undue delay in leaving the visiting area will lead to suspension or revocation of visiting privileges.
- Only Money orders, payroll checks, I.R.S. Checks, or certified checks will be accepted in the money box drop points located at the visiting counter or driveway locations.
- Clothing exchanges must be accomplished the inmate clothing exchange will be conducted on the **weekends only (Saturday and Sunday). Note:** The exception will be permitted for the inmate(s) that is scheduled for Court with verified paperwork. Clothing Exchange Hours: **0830 – 1500 hours and 1630 – 2200 hours.** The person designated by the inmate must take excessive clothing out of the Prison as soon as possible. Chester County Prison is not responsible for personal clothing or property of any inmate.
- Inmates are responsible for notifying those on their visiting list of any transfers within the Prison, which will change the inmate's visiting schedule.
- The Warden must approve any exception to these rules.
- NO SMOKING IN ANY PART OF THE VISITING AREA
- NO CELL PHONES PERMITTED IN ANY PART OF THE VISITING AREA

Revised 12-2008                                    8

## II.    GENERAL OPERATIONS

**DISCHARGE**
When you are discharged, all of your personal and prison property is to be removed from your cell, except your mattress. Prison property will be returned and inspected for any damages. You will be issued all personal property that had been held for you at the prison. You will be required to sign a receipt acknowledging that you have received your property.

Your financial accounts will be reviewed and after all of your financial obligations to the prison have been met; your account will be cleared. A check for the balance will be mailed to you in approximately one (1) week upon discharge.

Your funds can only be mailed to you if you have provided a valid, current address to the staff member who discharges you. If you have no forwarding address, you may make arrangements with the "inmate accounts department" to personally collect your funds here at the prison.

**RECREATION AND EXERCISE**
The housing unit officer for each unit will schedule the indoor and outdoor recreation areas. The housing unit officer based on the number of people utilizing recreation areas, weather conditions, including temperature and precipitation, etc, will control the availability.

- Sweatshirts may be worn for outside gym but are not to be sat or laid upon
- Sweatshirts must be worn on the torso
- No food or drink is permitted in the outdoor yard area
- The outside yard door must remain locked at all times
- Stairs, railings, windowsills, plumbing chases and "I-beams" may not be used for exercise
- All exercise and recreation will occur at the "indoor and/or outdoor" recreation areas only

**LAUNDRY**
Laundry service for bedding, blankets, towels and uniforms are mandatory. Your laundry is turned over during the appropriate scheduled days. (See Posting)

You are not permitted to hang/attach laundry to bars in your cell or anywhere else in the housing unit (You may use the hooks/desk railings in your cell)

Bedding (sheets, pillowcases and "bed sacks") must not be tied in knots and are to be presented for collection on the scheduled days

**VISITATION**
The visitation program is restricted by the security requirements of the prison, not to discourage family relationships. You will be given the opportunity to be eligible for visitation. The program guidelines for "family" visitation are as follows:
- Visiting will be permitted only during authorized hours on designated visiting days.
- An inmate may have only one (1) visit per day.

# I.      RECEPTION

**ADMISSION**
Upon entering the prison you will be expected to:
- Identify yourself.
- Truthfully answer any and all questions posed by staff that include but are not limited to: date of birth, race, gender, social security number, birth place, name and address of person to be contacted in the event of an emergency, etc.
- Answer a series of questions to help staff determine a "risk assessment"
- Supply booking officers with all of your clothing, money and valuables; you will be given a receipt for all articles turned over to staff.
- Cooperate when you are photographed, when a personal history is compiled and if you are fingerprinted.
- Accept the issuance of prison clothing, and other items of approved property.
- You will be permitted to keep only one (1) change of clothing, in storage, at the prison and items in excess must be sent out of the prison. (See Disposition of Personal Property)
- You will be assigned "intake status" during which time you will undergo orientation, medical review, etc.

**ASSESSMENT/ORIENTATION**
After you have completed the admission process, you may be temporarily placed in a holding area or be assigned a cell in the "intake unit". Females are housed in separate housing areas. During your first hours of confinement, you will have access to a collect call telephone for bail arrangements, to notify family, attorney, relatives, etc. of your location.

You are expected to shower and accept health and hygiene allotment.

You are expected to cooperate with medical and correctional staff during your interviews. Information will help determine your medical condition, your needs, classification level and housing assignment.

You will be issued and expected to read this handbook and keep it in your possession until your discharge/release. You will be required to return your handbook in good condition and if it is defaced, lost or destroyed; you will be required to pay a fee for the replacement cost.

Failure to cooperate or based on your degree of security risk and need for supervision, you may subject yourself to some form of corrective measure; thus be placed in a restrictive housing area. Your conduct while in the prison will be reported to your judge and/or parole authorities.

The orientation program is designed to help familiarize you with the programs, services and rules/regulations of the prison. Everyone will be provided with a handbook with information about the regulations. If you cannot read or do not understand a specific rule, etc., this is the time to ask staff and the information will be conveyed to you orally.

## MISSION STATEMENT

The Chester County Prison is committed in our responsibility to the community, our staff and the inmate population. In keeping with this philosophy, we recognize our obligation to:

- Protect the community through the provision of incarceration for both sentenced and pre-adjudicated individuals.
- Protect the staff and inmates by providing and maintaining a safe, secure and humane environment.
- Comply with all applicable federal, state and local statutes.
- Protect the Constitutional rights of all.
- Provide the opportunity for inmates to prepare themselves for reintegration into the community through appropriate educational and treatment programs.
- Serve the community in a professional and fiscally sound manner.
- View our staff as our greatest resource and empower them in an open and responsive working environment that enhances progressive ideas and action.
- Meets the requirements of the Americans with Disabilities Act, and will provide anyone with the accommodations necessary, including equipment for hearing impaired inmates, including TTY.
- Maintain standard policy and procedures that promote consistency, open communication and integrity for the efficient and effective operation of the prison.

## INTRODUCTION

This handbook was prepared so that you will know what is expected of you during your incarceration at the Chester County Prison. The prison is operated in order to provide a safe and secure environment for you and staff.

You are expected to follow and obey the regulations contained in this handbook and always follow the directions of prison staff! When you are given an order, you are required to comply promptly and properly. If you feel the order is unjust, you must still obey the order when given. You may then make a formal complaint in writing at a later time. Additionally, if you are given two conflicting orders, you must always obey the last order given.

The rules and regulations contained in this handbook do not cover all the situations that may arise. These rules and regulations are subject to change. When changes occur, notice will be provided through written communications. No handbook can address every situation that may arise. Issues not covered by this handbook or by written rule, directive or order will be decided based upon the spirit of existing rule or policy, institutional security, for safety or of other correctional interests.

**Chester County Prison rules and regulations are subject to change without notice.**

# THINK BEFORE YOU SPEAK OR ACT!

Revised 12-2008

5

where applicable while incarcerated. You will be informed of the cost for the service received and will authorize the payment by signing a "money release form" in which the money will be deducted directly from your inmate account or, depending on the fee; you will make arrangements with the business office for a time payment schedule. Medical services will never be denied to anyone who is in need of care regardless of financial status.

On June 16, 1998, Governor Tom Ridge signed into law, Act 84 of 1998 often referred to as the inmate restitution and information exchange bill. It requires that an exchange of information be circulated throughout the court system. This information allows representatives that operate within the judicial system (County and State Parole Offices and Facilities) to maintain current information about an individual. The exchanged information that is being circulated would be all materials pertaining to an individual's case, medical history, as well as record of adjustment in the county correctional facility, including but not limited to, misconducts and escape history. Any information regarding an individual's account will be furnished for the recovery of restitution. During your period of incarceration, if court ordered, fines, costs and restitution are imposed; the accounts department will automatically deduct 20% of any and all funds received. This money will be forwarded to Chester County Adult Probation and Parole Department for processing.

Keep this Handbook in your possession, review it from time to time, and take care of it since it is the property of this institution, and is only being loaned to you for the duration of your stay here.

**WARDEN**
**CHESTER COUNTY PRISON**

# FORWARD

You have been committed to Chester County Prison in accordance with the laws of the Commonwealth of Pennsylvania. Neither the Warden, the Security Department, nor the Treatment Staff of this institution has anything to do with committing you here and do not have any authority to release you prior to the date fixed by the Courts or as otherwise provided for by law.

This Handbook is being furnished to you in order to provide you with the information necessary to enable you to make the most beneficial and constructive use of your stay at this institution. It contains information that will be helpful to you adjusting to life in the institution. Included are rules and regulations by which you must govern your conduct and behavior, and explanations of services and programs available to you. Whenever a question arises in your mind about proper procedure, consult this Handbook. If you cannot find the answer in it, check with your Block Officer, supervisor or Counselor.

During the time you remain here, it is important for you to make the best possible adjustment and to make whatever changes within yourself necessary to enable you to live a relatively useful and productive life in society after your release.

As a part of making such changes, you must try to discover the reasons why you got into difficulty with the law, why you acted in the ways that resulted in your arrest, and how you can improve your chances for getting along in life without relying on behavior that gets you into trouble. This institution provides many treatment services that are designated to help you learn things about yourself, and to help you make these necessary changes.

These services include educational programs, family contacts, referrals and contacts for professional services, community volunteers, a Spanish-speaking translator, religious counseling, parole guidance, and recreational activities, medical and dental services. All services and programs are of value to you only to the extent you need them and use them. No one can make you use any service. The treatment and training you obtain while you are in this institution, depends entirely upon you. Make the most of your time here by working and participating in all programs which have been set up for your benefit.

Your adjustment, behavior, and progress, as well as your response to any treatment program in which you participate is observed, recorded and reviewed. Reports are completed by your Block Officer, Work Supervisor, your teachers, counselors, Chaplain, and other members of our Staff. These reports will be evaluated at certain periods and the Staff will note any changes you may have made yourself. These changes and the progress you make will eventually be reported to the Courts, Work Release/Pre-release, Probation Department, State and County Parole, or any other related agencies that may be involved in your release.

The Chester County Prison on March 14, 1995 implemented an "Inmate Financial Responsibility Program." This program requires that all inmates who are incarcerated at the Chester County Prison will be financially responsible for certain medical services and institutional costs

Revised 12-2008                                              3

# INDEX CONTINUED

**VI. CLASSIFICATION** ..... **21**
GENERAL INFORMATION ..... 21
RECLASSIFICATION ..... 21
CLASSIFICATION OVERRIDE ..... 21
SEGREGATION/RESTRICTIVE HOUSING ..... 21

**VII. RULES AND REGULATIONS** ..... **24**
HOUSING UNIT REGULATIONS ..... 24
    ISSUED AND ALLOWABLE PROPERTY ..... 24
    DISPOSITION OF PERSONAL PROPERTY ..... 24
    SEARCHES ..... 24
    CELL INSPECTIONS ..... 25
    COUNTS ..... 25
    DAYROOM RULES ..... 25
    DRESS CODE ..... 26
    TELEPHONES ..... 26
    TELEVISIONS ..... 27
    MOVEMENT ..... 27

**VII. DISCIPLINARY PROCEDURE** ..... **28**
SCHEDULE OF MISCONDUCTS ..... 28
    CLASS I OFFENSES ..... 28
    CLASS II OFFENSES ..... 29
    CLASS III OFFENSES ..... 30
MISCONDUCT CITATIONS ..... 30
INFORMAL RESOLUTIONS ..... 31
DISCIPLINARY HEARINGS ..... 31
DISCIPLINARY SANCTIONS AND SENTENCING ..... 32
APPEAL PROCESS ..... 32

**IX. OTHER INFORMATION** ..... **33**
REQUESTS/COMMUNICATION ..... 33
GRIEVANCES ..... 33
RIGHTS, PRIVILEGES ..... 34
RESPONSIBILITIES ..... 35
EMERGENCY ..... 35

# INDEX

| | |
|---|---|
| **MISSION STATEMENT** | **5** |
| **INTRODUCTION** | **5** |
| | |
| **I. RECEPTION** | **6** |
| ADMISSION | 6 |
| ASSESSMENT/ORIENTATION | 6 |
| | |
| **II. GENERAL OPERATIONS** | **7** |
| DISCHARGE | 7 |
| RECREATION AND EXERCISE | 7 |
| LAUNDRY | 7 |
| VISITATION | 7 |
| INDIGENT INMATES | 9 |
| MAIL | 9 |
|     INCOMING MAIL | 10 |
|     OUTGOING MAIL | 10 |
|     RESTRICTED CORRESPONDENCE/LIMITATIONS | 10 |
|     CENSORED MAIL | 11 |
| | |
| **III. SERVICES** | **12** |
| FOOD SERVICE | 12 |
| COMMISSARY | 12 |
| HEALTH CARE | 13 |
| SUICIDE PREVENTION | 14 |
| LIBRARY | 14 |
| LEGAL ASSISTANCE | 14 |
| NOTARY | 15 |
| HAIR CARE | 15 |
| VOTER REGISTRATION/ABSENTEE BALLOT | 15 |
| | |
| **IV. FINANCES** | **16** |
| FINANCIAL TRANSACTIONS | 16 |
| FINANCIAL RESPONSIBILITY/BILLING SERVICES | 16 |
| CO-PAYMENT FOR MEDICAL SERVICES | 16 |
| COUNTY PROPERTY | 17 |
| | |
| **V. PROGRAMS** | **18** |
| ELIGIBILITY | 18 |
| EDUCATION | 18 |
| RELIGION | 18 |
| INSTITUTIONAL JOBS | 19 |
| WORK RELEASE | 19 |
| RECOMMENDATIONS TO THE COURTS/PAROLE AUTHORITIES | 20 |

Revised 12-2008      1

# INMATE

# HANDBOOK



# CHESTER COUNTY PRISON

## 501 SOUTH WAWASET ROAD

## WEST CHESTER, PENNSLVANIA 19382



**Chester County Prison**

Page 13 of 23

**Policies and Procedures**

**Subject: Use of Force and Restraints (continued)**

## *Follow-up to Use of Force*

1. In order to ensure that inmates who are subject to the use of force are not unduly injured or to provide necessary treatment after inadvertent injuries, the following procedures will be put into effect:

   a. After force has been used against an inmate, the inmate will be examined by a medical staff member and receive any necessary treatment as soon as possible.

      i. Medical staff who examines the inmate after the use of force will document their findings in a written report to be filed with the investigating officer as well as in any routine medical notes. A copy of this report will be filed in the inmate's medical file. This report will include the following:

         1. Name, position, and signature of health services examiner;

         2. Time and date of examination;

         3. Location of Incident;

         4. Name and identifying number of individual examined as a result of incident;

         5. An indication of whether or not the individual examined has injuries;

         6. An indication of the additional treatment required and whether or not the individual was released or treated and released, assigned to ambulatory care (and date the individual is schedule to return for care), or assigned to a particular location for observation and treatment;

         7. An indication of the placement of the inmate

   b. Staff injuries will be given first aid and referred, if necessary, to a hospital, or Occupational Health Center by Institutional staff, and a full report will be filed with the Warden or designee on the nature and extent of the injuries.

2. Safeguards against unwarranted accusations by inmates concerning use of force include videotaping all use of force incidents when possible.

3. All uses of force will automatically prompt an investigation.

   a. The officer completing the institutional investigation into an incident involving the use of force will complete an investigation report within seventy-two (72) hours that details the involvement of outside agencies, charges filed, and other information arising out of the incident. The report will include:

| | |
|---|---|
| **Chester County Prison** | Page 14 of 23 |

| **Policies and Procedures** |
|---|
| **Subject: Use of Force and Restraints (continued)** |

    i. Date of report;

    ii. Names, numbers, ages, admission dates, and offenses/charges relating to individuals involved in the incident;

    iii. Brief description of the incident;

    iv. Date, time, and place of occurrence, and weather at that time



**Chester County Prison**

Page 15 of 23

## Policies and Procedures

**Subject: Use of Force and Restraints (continued)**

### *General Reporting Requirements*

1. The Shift Commander and Duty Officer will be immediately notified when any type of physical force is used. The follow-up to use of force incidents will include the filing of reports by the staff involved, medical staff examining the inmate(s) involved, and the investigating officer. Copies of all of the forms will be placed in the file of the employee(s) involved in the use of force at the conclusion of the investigation.

2. A written report prepared by the officer(s) involved will be completed no later than the conclusion of that shift and filed with the supervisor. The report will include the following:

    a. Name, rank, badge number, and signature of reporting officer;

    b. Time, date, and location of incident;

    c. An accounting of the events leading to the use of force;

    d. An accurate and precise description of the incident;

    e. The reasons for employing force;

    f. Type of physical force employed by officer(s);

    g. A description of the equipment or weapon, if any, and the manner in which it was used;

    h. A list of the names and ranks of all employee participants;

    i. A list of all witnesses to the incident

    j. Name(s), and County Number(s) of inmate(s) involved;

    k. Time inmate(s) involved sent for medical examination or treatment if applicable;

    l. Copies of the disciplinary reports filed by the reporting officer, if applicable;

    m. Details of reporting officer's injuries, if applicable

## *Use and Application of Restraints*

1. Restraints may only be used as a precaution against escape or as a precaution against an inmate injuring him/her or others. The application of restraints shall not be used as a punitive sanction, for the sole purpose of inflicting pain, or for the purpose of exposing inmates to public ridicule.

2. Restraints for medical purposes may be used only at the discretion of a physician or by order of the Duty Officer/designee, if a physician is unavailable. If other methods of control are insufficient to prevent an inmate from injuring him/herself or other persons or damaging property, the Supervisor shall immediately consult a physician

**Chester County Prison**

Page 16 of 23

## Policies and Procedures

**Subject: Use of Force and Restraints (continued)**

and promptly report the use of such restraints to the Duty Officer and Shift Commander. When instruments of restraint are applied, medical staff shall determine the need and frequency of medical examinations and/or observation of the inmate

3. Restraints do not replace supervision; prisoners will not be left unsupervised in restraints.

4. Institutional staff is authorized to carry handcuffs under routine conditions.

5. Staff is authorized to use restraints in order to control the behavior of inmates only if all other reasonable methods have failed.

6. Types of mechanical restraints include, but are not limited to: handcuffs, flex cuffs, transport belts, leg shackles, leather restraints, and restraint chair.

7. Use of restraints for inmates being transported outside the Institution as per Transport Policy (referred to Chester County Prison Officer's Handbook "Inmate Transport"), and will be employed as a routine duty. If approved by the Duty Officer or higher, the restraint chair may be used for transports of appropriate individuals.

8. A security restraint is used for one or more of the following reasons; however this list is not all-inclusive:

    a. to transport an inmate for court, to another facility, doctor's appointment, community hospital admittance, and other authorized temporary absences (ATA);

    b. to secure and move an inmate in L4, L6 or L7 housing status (Restricted Housing Unit (RHU), Administrative Segregation Unit (ASU) or Medical Health Unit (MHU));

    c. an emergency situation, where other means of control cannot be achieved;

    d. after a confrontation that has become physical or before a confrontation can become physical; and/or

    e. to secure an inmate whose medical condition (either suicidal or emotionally disturbed) could cause the inmate to hurt himself/herself.

### *Use of Restraints for Pregnant Inmates*

1. Before applying restraints to any pregnant female inmate, the Duty Officer and the medical department supervisor must be contacted. Each situation will be reviewed on an individual basis to determine if restraints are to be utilized. After conferring with the medical department the Duty Officer will make the final decision on the use of restraints.

2. Restraining of any pregnant inmate shall be considered an extraordinary occurrence



**Chester County Prison**

Page 17 of 23

**Policies and Procedures**

**Subject: Use of Force and Restraints (continued)**

and will be reported on the monthly Extraordinary Occurrence Report (EOR) and a written EOR (DC-123C) "Restraining of Pregnant Female". At a minimum the written Extraordinary Occurrence Report (EOR) will include:

    a.  type of restraint utilized; and

    b.  the circumstances under which restraints were applied.

3.  When a pregnant inmate needs to be restrained, the restraints used must be the least restrictive necessary to ensure safety and security. Any restraints used must not physically constrict the direct area of the pregnancy. The medical department shall advise when there are specific limitations to the manner in which security restraints must be used.

4.  Restraints shall not be applied to pregnant inmates in the following situations, unless extraordinary circumstances exist:

    a.  any inmate known to be pregnant during any stage of labor;

    b.  any pregnancy related medical distress;

    c.  any period of delivery;

    d.  any period of postpartum;

    e.  transport to a medical facility as a result of any of the preceding conditions;

    f.  transport to a medical facility after the beginning of the second trimester of pregnancy; and

    g.  waist chains/restraint belts will not be applied to an inmate during transport while returning from a medical facility back to the facility following a cesarean section delivery.

5.  The Duty Officer / Shift Commander may approve the use of restraints in cases where the inmate poses a substantial risk of imminent flight or extraordinary medical/security circumstances dictate that the inmate be restrained to ensure the safety and security of the inmate, staff, medical personnel, and the public. In these circumstances the restraints shall be applied under the following guidelines:

    a.  waist chains/restraint belts will not be utilized;

    b.  leg restraints shall not be used on any inmate who is in labor;

    c.  restraints will be immediately removed upon request of a doctor, nurse, or other health care professional;

    d.  if any restraint is applied, the inmate will not be left unattended without the ability for staff to remove the restraint should it become medically necessary;

    e.  when restraints are permitted for the above reasons, the least restrictive

| Chester County Prison | Page 18 of 23 |
|---|---|

**Policies and Procedures**

**Subject: Use of Force and Restraints (continued)**

method possible will be utilized during the second or third trimester of pregnancy; and

    f.  escort staff shall immediately notify the Shift Commander of all requests for restraint removal and/or extraordinary occurrences.

6.  Procedures for restraining an inmate that does not meet any of the conditions in #4 above, and prior to the second trimester of pregnancy, will be as follows:

    a.  waist chains/restraint belts will not be utilized;

    b.  the inmate shall be handcuffed in the front for safety reasons;

    c.  leg restraints may be utilized; and

    d.  the medical department shall advise when there are specific limitations to the manner in which security restraints may be utilized.

## *Use of the Restraint Chair*

1.  The restraint chair is equipped with armrests, a foot platform, and permanent wheels. The chair can be stationary or mobile when the wheels are engaged, to allow the chair and restrained inmate to be moved from location to location.

2.  Whenever an inmate has been placed in the restraint chair, supervisors will capture the full recording of the session and save it to the Prison S: Drive for future use. The data is to be saved to the following folder: **S:\Supervisor\Evidence\Restraint Chair Recordings.** The supervisor should identify it by: name of the inmate, inmate county number and date of the incident. **Example: (John Smith #12,345 012517).**

3.  The restraint chair will only be used in a Security Level 4, 6 or 7 Housing Unit, or to transport an inmate to an L5 Housing Unit, in a RHU, ASU or MHU, unless otherwise authorized by the Warden or Designee.

    a.  Prior to placing an inmate in the restraint chair, medical and psychiatric clearance must be obtained. This is to verify that there are no medical or psychiatric conditions that would preclude use of the restraint chair. If prior approval cannot be obtained, in cases where the inmate's behavior could result in immediate harm to himself/herself or others, then such approval shall be sought immediately after placing the inmate in the restraint chair. During non-regular working hours, the Duty Officer may authorize placement of an inmate into the restraint chair pending medical and psychiatric clearance.

4.  The restraint chair may be used to gain control of an inmate:

    a.  when the inmate is throwing material or objects (urine, feces, food, etc.), and other interventions have failed to stop the behavior;

    b.  after a physical confrontation involving staff or another inmate;

    c.  for medical procedures such as DNA collection, forced feeding, etc.;

| Chester County Prison | Page 19 of 23 |
|---|---|

## Policies and Procedures

**Subject: Use of Force and Restraints (continued)**

    d.  whose behavior presents a danger to himself/herself or others; and/or

    e.  to prevent the inmate from destroying County property.



**Chester County Prison**

Page 20 of 23

| **Policies and Procedures** |
| --- |
| **Subject: Use of Force and Restraints (continued)** |

### *Restraint Chair Protocol*

1. The N.C.C.H.C. Standard J-66 governs guidelines for the use of the restraint chair. Refer to the policy and procedure manual. Our orders are renewed every 8 hours. The restraint chair will be used for those patients deemed appropriate by the medical and mental health staff and those referred to for assessment by security.

    a. Special Housing needs inmates.

    b. Self mutilators

    c. Patients who are in bed restraints but slip out of restraints, chew restraints, can not be controlled properly by bed restraints.

2. The patient in the restraint chair will be observed in the medical housing unit.

3. Inmates in restraints must be turned/positioned/exercised every two (2) hours while awake and given the opportunity to use toilet facilities when needed. This **MUST** be done at a minimum of two (2) hour intervals. Vital signs should also be taken every two (2) hours. Personal hygiene and adequate hydration measures must be followed at all times. The two hour observation is to be documented on the Restraint Flowsheet.

4. Restraints are to be applied securely enough to restrict the inmate's movements, but not tight enough to impede circulation or cause nerve impairment or skin damage.

5. An inmate **MUST** be released from the restraints **AT LEAST ONCE EVERY FOUR (4) HOURS**. When an inmate is released after four (4) hours of being restrained, the inmate is to be given at least five (5) minutes to stretch and exercise prior to being restrained again. Inmate should be examined by a Prime Care Medical (PCM) nurse to ensure that there are no circulation problems and that they are not suffering physically from this experience. An inmate should only be restrained as a last resort and for the minimum amount of time that is absolutely necessary.

6. Meals may not be withheld from an inmate in the restraint chair. he/she will receive the same meals as those served to the general population, or a modified meal as approved in accordance with Prison policy. Refusals by the inmate to eat and/or drink shall be handled in accordance with Medical Department policy

7. Access to a toilet will be made available as needed, and should be offered at the same time that exercise is offered. The use of restraints to assure safety of the inmate and staff (leg irons, handcuffs, waist belt, ambulatory restraints, and/or spit hood) during toilet access and/or exercise will be reviewed and approved by the Shift Commander and documented.

8. If it deemed that the patient's behavior is appropriate the use of the restraint chair will be discontinued. The patient will be housed in a safe area for 24 hours observation.



| **Chester County Prison** | Page 21 of 23 |
|---|---|

| **Policies and Procedures** |
|---|

| **Subject: Use of Force and Restraints (continued)** |
|---|

9.  If the patient regresses, he/she will be placed back into the restraint chair, this time for 3 hours. Refer to "c". Each time the patient regresses and is placed back into the chair, the time to reassess is lengthened by (1) one hour. Remember to document this on Dispensary Sheets as well as the Restraint Log.

10. Medical staff who examines the inmate after the use of restraints will document their findings in a written report to be filed with the supervisor as well as in any routine medical notes. A copy of this report will be filed in the inmate's medical file. This report will include the following;

   a.  Name, position, and signature of health services examiner;

   b.  Time and date of examination;

   c.  Location of Incident;

   d.  Name and identifying number of individual examined as a result of incident;

   e.  An indication of whether or not the individual examined has injuries;

   f.  An indication of the additional treatment required and whether or not the individual was released or treated and released, assigned to ambulatory care (and date the individual is schedule to return for care), or assigned to a particular location for observation and treatment;

   g.  An indication of the placement of the inmate

## Use of Psychiatric Restraints

1.  Psychiatric restraints are those devices and techniques designed to subdue, limit, restrict, or control an inmate's movements due to psychiatric or organic medical causes or conditions. Psychiatric restraints are used to prevent injury or restrict interference with the delivery of vital medical care involving an inmate affected by a psychiatric disorder, disorientation, or confusion. Psychiatric restraints include leather restraints, helmets, etc.

2.  If restraints are necessary, the psychiatrist will be contacted for a verbal order for the use of restraints, the type of restraint to be used, and for admission to a MHU.

3.  The nurse will write the physician's initial verbal order. A Licensed Practical Nurse (LPN) may write the initial order if the urgency of the medical circumstances requires immediate therapeutic treatment. The restraints may be ordered for the following initial time limits:

   a.  four hours for adults (18 years or older); or

   b.  two hours for youthful offenders (less than 18 years old).

4.  After the initial order has expired, the nurse must receive additional orders as appropriate if restraints are to be continued, or if a lesser form of restraint is to be

| | |
|---|---|
| **Chester County Prison** | Page 22 of 23 |

| **Policies and Procedures** |
|---|
| **Subject: Use of Force and Restraints (continued)** |

used. Before requesting or writing additional orders for restraints, the nurse must complete a face-to-face reassessment of the inmate and consult with the psychiatrist. Additional orders for restraints may only be written for the following time limits:

    a.  four hours for adults (18 years or older); or

    b.  two hours for youthful offenders (less than 18 years old).

5.  Additional orders for restraints must be reviewed and/or renewed every two to four hours depending on the age of the inmate. The following are the criteria for the number of times restraints may be ordered/renewed within a two hour period.

    a.  An adult may have six orders for non-Mental Health Unit (MHU) restraints. (One initial order and five renewal/additional orders).

    b.  An adolescent (less than 18 years old) may have 12 orders for restraints. (One initial order and 11 renewal/additional orders).

    c.  The maximum period for restraint orders to be in effect is 24 hours for a non-MHU inmate.

6.  After the maximum period for restraints has expired, additional orders for restraints may only be written after the psychiatrist has completed a face-to-face reassessment of the inmate. The psychiatrist will document the medical necessity for continuing the restraints and the results of the reassessment of the inmate in the inmate's medical records.

7.  If the need for restraints extends beyond 24 hours, the psychiatrist will consider a mental health commitment to a Department Forensic Treatment Center, or an MHU.

8.  The psychiatrist or medical physician must countersign all orders for restraints within 24 hours from the time the verbal orders are written. The psychiatrist issuing the order is responsible to ensure that the order is signed by a licensed physician.

9.  The psychiatrist, in cooperation with the Mental Health Team (MHT) will develop an Individual Treatment Plan (ITP) with the goal of removing the restraints and instituting treatment methods to eliminate problematic behaviors that are dangerous to the inmate or others. The meeting with the MHT will occur on the first working day after the order for the restraints was written. The MHT will meet even if the restraints have been removed

10.  The inmate will be admitted to the infirmary and placed in a Psychiatric Observation Cell (POC).

11.  The physician/designee must explain to the inmate why he/she is being restrained.

12.  An inmate is restrained with extremities and body in proper alignment.

13.  Restraints will not be placed on an extremity that is the site of intravenous therapy that is being administered or proximal to an IV shunt currently being used for dialysis



| **Chester County Prison** | Page 23 of 23 |
|---|---|

**Policies and Procedures**

**Subject: Use of Force and Restraints (continued)**

14. The inmate's head may be raised slightly to decrease feelings of vulnerability and reduce danger of asphyxiation.

15. Medical staff must document the status of an inmate in restraints on the inmate's medical chart every 15 minutes.

16. Medical staff may not order the use of non-psychiatric/mechanical restraints (handcuffs, shackles, etc.).

17. Positional Asphyxia or sudden death could occur when using restraints. The CO and nurses must be aware of breathing difficulties or loss of consciousness by continuing to verbally communicate. If the inmate's speech becomes irrational or stops, staff shall evaluate the situation carefully.

## *Application of Security Restraints in Medical Areas*

1. If an inmate's behavior is violent and dangerous enough to constitute a serious risk to institutional security and order, then staff, under the advice of appropriate medical staff, may restrain the inmate to a bed, or the restraint chair. In such cases, a medical staff member will check the inmate every fifteen (15) minutes to determine that the condition of the inmate is satisfactory. A security staff member will check the restraints every thirty minutes to determine that the inmate is secure.

2. An inmate will remain restrained so long as the restraints do not interfere with the medical treatment being received or given and security is not jeopardized.

3. An inmate so restrained may be given the opportunity to be released from the restraints in order to eat and use the toilet.

4. Security and medical staff will maintain an accurate record on a restrained inmate's food and fluid intake, as well as a general description of the inmate's condition and behavior.

5. Security staff will maintain an Isolation log sheet on the inmate.



**Chester County Prison**

Page 12 of 23

### Policies and Procedures

**Subject: Use of Force and Restraints (continued)**

    iv.  where an inmate(s) threatens bodily harm to himself or herself, other inmates, staff, or others and other means of restraint have been tried unsuccessfully or are not available; or

    v.  where a breach of security is imminent if pepper spray is not used.

6. Specific types of situations which may result in the use of pepper spray include, but are not limited to:

    a.  an inmate is armed with a blunt or sharpened weapon;

    b.  an inmate refuses to come out of the cell, shower, or other area, and it is necessary to remove the inmate;

    c.  it is necessary to remove a barricaded inmate from an area; or

    d.  multiple inmates are passively resistant to staff orders and a decision is made to disperse the group.

7. If necessary, staff wearing the appropriate chemical masks will enter the area as soon as possible to remove the resisting inmate(s) and/or direct the securing of other inmates in the area. Dependent upon the degree of resistance and perceived threat, staff will be issued the appropriate protective items and equipment, which will be used according to this policy.

8. All staff and inmates involved in the use of force incident will be assessed for injuries and decontaminated immediately following the use of pepper spray. After using pepper spray (OC), staff will restrain and escort the affected inmate(s) to the appropriate area for decontamination and injury assessment. The Warden or designee will ensure that the medical personnel assigned to the Institution are trained in the appropriate decontamination procedures. (Ordinarily, an affected individual can be decontaminated by thoroughly rinsing the affected area with cool water.) An inmate may not refuse to be evaluated for injury by medical staff.

9. The Captain in charge of Training will assign staff to conduct a weekly inventory of the pepper spray (OC) devices and related equipment. Upon the discovery of any discrepancy, staff immediately will notify the Captain in charge of Training. The Captain in charge of Training will initiate an investigation and any other appropriate action. The Captain in charge of Training will complete the investigation within seventy-two (72) hours and forward it to the Warden or designee.

10. Staff may consider pepper spray as a reasonable alternative to using an Electronic Immobilizing Device, when appropriate. An EID requires contact with the inmate before application; pepper spray allows staff to maintain some distance between the inmate and themselves while they incapacitate the inmate.

**Policies and Procedures**

**Subject: Use of Force and Restraints (continued)**

8. Any unauthorized use of an EID (for example, horseplay or practical jokes) is prohibited and is grounds for disciplinary action, up to and including termination.

9. Any inmate to whom staff applies an EID must be examined by medical staff as soon as possible after the incident.

10. A written report will be prepared by the officer and staff involved in the application of an EID no later than the conclusion of that shift.

## *Use of Pepper Spray (Oleoresin Capsicum)*

1. Pepper spray (OC) is a naturally occurring inflammatory agent found in cayenne peppers. OC causes an almost immediate swelling and burning of the eyes and breathing passages. When the agent is inhaled, the respiratory tract is inflamed, and breathing is restricted. Effects do not support high levels of physical activity such as fighting with staff.

2. The Warden or designee will ensure that pepper spray dispensers and appropriate chemical masks are located and secured in appropriate areas within the Institution.

3. Staff may use pepper spray (OC) only upon the authorization of a supervisor. The supervisor authorizing the use of pepper spray (OC) or designee will notify the Shift Commander, or designee as soon as possible. Resistance (active or passive) by an inmate or inmates must be evident to justify the pepper spray. Staff will not use pepper spray as a means of punishment, personal abuse, harassment, or coercion. Staff will cease using pepper spray immediately upon the inmate(s) complying with given orders.

4. Institutional supervisory staff (including sergeants, staff sergeants, and captains) will receive thorough training is the use of pepper spray (OC) including decontamination procedures, tactical applications, and signs of respiratory distress. Institutional supervisory staff may be authorized to carry OC upon their person while on duty, with approval from the Warden or his designee. Only staff who have been trained in the use of pepper spray (OC) are authorized to use it.

5. Pepper spray is justifiable in situations:

    a. where other means of resolving the situation (for example verbal commands or physical presence) have either been unsuccessful, or if yet to be attempted, may:

        i. result in bodily injury to staff, the inmate(s), or others;

        ii. jeopardize the security of the facility; or

        iii. lead to or assist in the escape of the offender;



**Chester County Prison**

Page 10 of 23

**Policies and Procedures**

**Subject: Use of Force and Restraints (continued)**

      i.  applied on an individual

      ii.  displayed as a deterrent;

      iii.  testing of unit by operator prior to usage;

  d.  list of certified staff operators, who have used the unit in question;

  e.  staff members who authorized EID activation or use;

  f.  inmate(s) involved - list their name(s), and County Number(s)

  g.  time and date of the return of the EID to the appropriate storage area;

  h.  Other remarks deemed pertinent by the reporting officer.

5. Only certified EID instructors are permitted to perform any maintenance on the EID units. All problems or repairs with the *EDs* must be referred to a certified Instructor. The *EDs* maintenance record will accompany the *ED* units for any repairs.

6. Only staff who is certified in the use of EIDs will be issued an EID. The Training Department will maintain a current list of certified staff at the Institution. The Central Control unit will have a duplicate of this list.

7. The following guidelines apply to all uses of EIDs:

  a.  EIDs will be used is a safe and humane manner.

  b.  Prior to any planned use of any chemical or electrical agent the medical provider should be contacted.  This contact is to determine if there is an underlying medical condition that would preclude their use.

  c.  EIDs will only be used to the extent necessary to control the inmate in question.

  d.  An EID is applied to the body and fired to incapacitate.

  e.  Staff will not intentionally use an EID on or about the head, neck, or groin areas of any person. Also, staff will not intentionally apply an EID to a pregnant female or female's breast.

  f.  Staff will not intentionally apply an EID to an open wound on the body.

  g.  Staff will not use an EID or the threat of using an EID on an inmate as an interrogation method.

  h.  Staff must not use an EID in the presence of natural gas, propane, gasoline or other explosive gases or fumes.

  i.  Staff is prohibited from excessively test firing the EID unit. Excessive test firing damages the unit and could create a hazard to staff



**Chester County Prison** | Page 9 of 23

| **Policies and Procedures** |
| --- |
| **Subject: Use of Force and Restraints (continued)** |

*Use and Control of Firearms*

1. Correctional officers shall not:

    a. Unnecessarily draw from a holster or otherwise display a firearm

    b. Carelessly handle a firearm;

    c. Recklessly discharge a firearm from a moving vehicle;

    d. Attempt to fire through an obstruction such as a door, wall, or window. Firing through an obstruction could result in a dangerous ricochet

2. Firearms and related security equipment shall be inventoried weekly by staff assigned by the Captain in charge of Training to ensure accountability and to determine general condition.

3. Firearms shall be properly maintained and repaired by a certified Armorer as needed. Staff assigned by the Captain in charge of Training shall maintain maintenance records.

4. Staff shall not repair, adjust, alter or work on Institutional firearms, nor shall unauthorized ammunition be substituted for the authorized issue, by any person without written authorization from the Warden, or Designee.

## Use of Electronic Immobilizing Devices

1. An electronic immobilizing device (EID), also known as a "stun device," is a device that, when applied to a person's body, transmits an electronic impulse that temporarily incapacitates that person. Electronic restraining devices (EIDs) provide an effective and safe alternative to the more potentially injurious control methods such as batons and hand-to-hand- combat. The use of EIDs will be limited to those situations where an inmate displays hostile, aggressive or disruptive behavior and the inmate has failed to respond to less aggressive control methods (for example, verbal communications or physical presence).

2. The Warden or designee may authorize the use of ERDs if, in their judgment, the situation warrants the use of EIDs.

3. The Warden will designate a secure location away from the inmate population for the storage of EIDs.

4. The Institution must maintain a maintenance record for each EID unit. This record must be maintained in the same secured location as the EIDs. Each record must contain the following information:

    a. time and date of issuance

    b. amount of time (in seconds) that unit was activated

    c. reason for activation, for example:



**Chester County Prison**

Page 8 of 23

### Policies and Procedures

**Subject: Use of Force and Restraints (continued)**

*Guidelines Regarding Deadly Force*

1. Firearms will be used only in situations in which the use of deadly force is authorized and will not be discharged if less extreme measures will suffice.

2. A discharge of a firearm, either accidental or intentional, is considered to be a use of deadly force. It must be dealt with accordingly.

3. The officer discharging the firearm is responsible for each round fired at the target. The officer must have a clear firing path to the target before firing at the target.

4. Staff are not be permitted to discharge a firearm in the air as a "warning shot".

5. The Warden or designee of the Institution will compile and maintain all of the post orders for armed posts, including clear instructions on weapons use. The instructions will be sufficiently detailed so as to provide staff with a clear understanding of the circumstances under which they can use deadly force.

6. Staff members fired on by an inmate or non-inmate may return fire, taking into account the safety of non-combatants in the vicinity.

7. Staff using deadly force will use all possible caution when in the proximity of civilians or when fired shot may carry to an inhabited area.

8. If time and circumstances permit, staff will notify supervisory staff of the situation and request further instructions.

*Guidelines Regarding Firearms*

1. Except in extreme emergencies, firearms are not permitted inside the Institution, and only then with the authorization of the Warden or, if the Warden is not available, the Warden's designee.

2. Other law enforcement personnel are not authorized to bring weapons into the Institution without explicit approval of the Warden or designee.

3. Only staff who are currently certified in the use of the firearm to be used, may draw or use that firearm in the course of their duties.

4. The Captain in charge of Training shall ensure that all correctional staff who might be issued firearms are available for and receive training and re-training necessary to certify and re-certify them in the proper use of firearms.

| **Chester County Prison** | Page 7 of 23 |
|---|---|

| **Policies and Procedures** |
|---|
| **Subject: Use of Force and Restraints (continued)** |

    c.  Tackling the inmate to bring him or her down.

    d.  Use of Control Techniques

    e.  Use of OC Pepper Spray, EID, or Pepperball Launcher

        i.  Use of these devices is authorized only by staff specifically trained and certified in their use

        ii.  Use of these devices must be approved by the Shift Commander or Duty Officer

        iii.  The Correctional Emergency Unit (CEU) Commander or his designee shall maintain a roster of staff certified to use these devices

        iv.  The CEU Commander or his designee shall maintain records verifying periodic inspection and maintenance of these devices to insure their safe and effective use

## Less Lethal Munitions

1. The use of less lethal munitions is only authorized by staff specifically trained and certified in their use
2. The use of less lethal munitions must be approved by the Warden or his designee

## Deadly Force

### Pennsylvania Code Title 18 Chapter 5 § 508 (c)(2)

"A peace officer or corrections officer is justified in the use of such force, including deadly force, which the officer believes to be necessary to prevent the escape from a correctional institution of a person whom the officer believes to be lawfully detained in such institution under sentence for an offense or awaiting trial or commitment for an offense."

1. Staff is authorized to use deadly force only in accordance with the above statute, and under the following circumstances:

    a.  protection of self or a third party, such as inmates, from imminent danger or threat of death or serious bodily injury;

    b.  prevention of the commission of a crime which would reasonably result in death or serious injury to staff and/or a third party;

    c.  protection of property, if damage to property would reasonably result in serious harm or death to staff and/or a third party



**Chester County Prison**

Page 6 of 23

**Policies and Procedures**

Subject: Use of Force and Restraints (continued)

    a. Squad tactics to demonstrate a show of force may be necessary in responding to cell incidents and incidents in other areas. Staff involved in these activities will be trained in these tactics.

## Verbal Commands

1. It is preferable to gain control of an inmate using direct verbal interaction and commands. If additional force is required, continue to use firm and fair nonverbal and/or verbal behavior throughout the incident whenever doing so does not jeopardize staff safety. A model for interactive behavior with the inmate(s) is as follows:

    a. State the command to the inmate(s), indicating what you want him or her to do to comply in a firm and fair tone.

    b. If the inmate(s) does not comply with the command, attempt to reason with him or her verbally, pointing out the need to avoid further, more intense methods of gaining compliance.

    c. Advise the inmate(s) of the consequences of non-compliance, including force and provide, if possible, a face-saving alternative to the inmate's behavior. For example, an officer might suggest that walking away is a demonstration of strength, or that reacting physically demonstrates being out of control.

    d. Confirm with the inmate(s) verbally his or her or their intention(s) not to comply with the given order(s). Use additional force as needed.

## Open Hand Control Techniques, OC Pepper Spray, Pepperball Launcher, Electronic Immobilizing Device (EID)

1. The use of physical force is justifiable when verbal and non-physical options have been exhausted and staff believes one or a combination or the following has occurred or is in the process of occurring:

    a. The security of the facility or others is at imminent risk

    b. An attack by the inmate(s) is occurring

    c. Inmate or other (visitor detained) is attempting to flee/escape custody

    d. excessive repetition of non-compliance with direct commands or orders

2. At this level, staff may put their hands on the inmate(s) to gain control and/or compliance. Hand-to-hand combat tactics may be used. Direct physical force is to be applied with backup. Unless such situations are urgent, this force will be applied at the direction of a supervisor. Examples of direct physical force include:

    a. Holding the inmate to control the inmate or to move him or her along.

    b. Wrestling the inmate down to contain him or her.



**Chester County Prison**                              Page 5 of 23

**Policies and Procedures**

**Subject: Use of Force and Restraints (continued)**

19. All instruments utilized during the implementation of any Use of Force or Restraint activity are located as follows:

    a. **Armory**

        i. All Firearms and lethal munitions

        ii. Less Lethal munitions such as "Rocket Rounds", "Hornets Nests Rounds", "Trident Rounds", "Bore Thunder" Instantaneous "Flash Bang" rounds and the "Thunderbolt Launchable" delayed "Flash Bang"

    b. **C.E.U. Room**

        i. Chemical Agents such as Oleoresin Capsicum (OC) canisters

        ii. Electronic Immobilization Devices (EIDS)

        iii. Restraint Chairs

        iv. Batons

    c. **Mechanical Restraints are maintained in the following locations:**

        i. Transport Belts – Central Control, C.E.U. Room, ID Control Room, J-Block Control Room, O-Block Control Room and Work Release Control Room

        ii. Flex Cuffs - CEU Room,

    d. **All Medical Restraints are stored in the Prison Medical Department.**

## *Applications of Levels of Force*

Levels of force, from the mildest to the most intense, are explained here, but should not necessarily be construed as a chronological procedure to be followed from one level to another, since situations requiring force may follow a variety of behavioral scenarios in a number of sequences. The most important principle is that the lowest level commensurate with the force situation should always be chosen to effect control.

### *Physical Presence (Show of Force)*

1. In some situations where an inmate or inmates are out of control, the observable and audible presence of the correctional officer into the immediate area can stop the loss of control and/or deter further escalation.

2. In cases where an officer's presence and verbal methods/commands do not result in the inmates' compliance or control, or when an incident escalates so rapidly that verbal methods are not feasible, staff may call for backup. Verbal commands will be issued by the staff on the scene, with the additional staff serving as visual reinforcement of the Institution's intention to gain control of the inmate(s).



**Chester County Prison**

Page 4 of 23

**Policies and Procedures**

**Subject: Use of Force and Restraints (continued)**

    f. Every effort will be made to video, and audiotape the incident, including the efforts of staff to use alternative methods, such as verbal intervention, other than force.

    g. If a pre-planned, organized use of force is not videotaped, the supervisor in charge must state his or her justifications for not videotaping the incident in writing as part of his or her report on the incident.

11. Only approved, Institution-issued equipment will be used to apply force unless the Warden or his designee approves otherwise.

    a. The use of personal weapons, ammunition, and equipment is prohibited in the Institution.

12. Equipment necessary to use force applications will be stored, controlled and issued in accordance with the policies of the Institution.

13. The staff who used force no later than the conclusion of that shift will prepare a written report. If more than one staff member is present, or if the supervisor is present during the use of force, each of these staff members will prepare a report. All force reports will be submitted to the immediate supervisor, who will submit them to the investigating officer (usually the Shift Commander, or Duty Officer).

14. Investigations regarding the use of force will not terminate because of release or transfer of the inmate(s) involved.

15. The policy will be reviewed on a regular basis. An update to the policy to include new technologies under development for future use will be accomplished periodically.

16. All staff members of the Institution will have completed training in the appropriate use of all permissible types of force, and the procedures to be followed in the use of force.

17. All employees who are authorized to employ restraints will be trained in the necessary techniques for restraining devices employed by the Institution. (Staff will be trained in the use of hard and soft restraints, restraining inmates to beds and other fixed objects, use of restraints during normal escort duty, emergency situations, movement in secure units, and the procedures for reporting the use of restraints.)

18. All employees who may be issued firearms in the course of their duties will complete a certification program.

    a. The Institution will provide an annual re-certification program in the use of firearms. Proof of Certification will be issued to the employee. Firearm training / certification will occur on a priority basis.

    b. Additional training shall be initiated upon the introduction of modified or new equipment to be used to apply appropriate force in the Institution.



**Chester County Prison**

Page 3 of 23

**Policies and Procedures**

**Subject: Use of Force and Restraints (continued)**

8. Before committing to use a particular type of physical force, staff will assure that sufficient back-up staff and/or resources are present and that any required authorization is given.

9. Unless an emergency situation exists, force will not be applied without the presence of another staff member and a supervisor. Generally, it is preferable for physical force to be applied in the presence of staff and a supervisor. The primary role of the supervisor should be to assess the situation, select the responses to be attempted along with their sequence of application, assure the availability or required staff and resources, initiate and terminate responses, and coordinate and supervise responses. This provision is not to diminish the value of a supervisor as a role model, trainer, and backup to the primary staff member using force.

10. Staff will videotape incidents that require or that allow for the pre-planned, organized use of force (for example, cell extractions). Staff will conduct the videotaping in accordance with this policy.

    a. The purpose of videotaping pre-planned, organized use of force if to show the appropriateness or inappropriateness of staff response in order to protect staff from allegations of unnecessary use of force.

    b. Staff will videotape (including audio) incidents that require or that allow for the pre- planned, organized use of force (for example, cell extractions). Videotaping the incident will include:

        i. Instructions to staff by supervisor as to their duties and responsibilities;

        ii. Identification of staff involved in the use of force;

        iii. Verbal dialogue of supervisory staff persuading the inmate(s) to cooperate;

        iv. The actual use of control techniques, security equipment used, and participating staff;

        v. The medical examination of the inmate(s) or his or her refusal to be examined for injuries.

    c. All incidents, which are videotaped or should have been videotaped, will automatically initiate an investigation of the use of force.

    d. After the incident has concluded, the Shift Supervisor will notify the Warden or his designee of the incident. The Shift Commander is responsible for ensuring that the videotape is turned over to the proper investigating Officer.

    e. The videotape will be retained for three (3) years after the date of the incident. If litigation is filed or an investigation is underway, the tape will be retained until the suit or investigation is completed.



**Chester County Prison**

Page 2 of 23

**Policies and Procedures**

Subject: Use of Force and Restraints (continued)

    c. Protect oneself against another's use or attempted use of unlawful physical force.

    d. Protect a third person against another's use or attempted use of unlawful physical force.

    e. Prevent an inmate from taking another person hostage or causing serious bodily harm to another person.

    f. Enforce the rules and regulations of the Institution.

2. Force shall be employed in accordance with the Force Continuum when possible, unless the staff member reasonably believes that the situation requires an escalation to a higher level of force in order to achieve compliance and/or control:

    a. Prescence (show of force)

    b. Verbal commands

    c. Open hand control techniques, OC Pepper Spray, Pepperball launcher, Electronic Immobilizing Device (EID)

    d. Chemical munitions other than OC

    e. Active counter measures (strikes) and Less Lethal Munitions (beanbag rounds, stinger rounds, etc.)

    f. Firearms (deadly force)

3. Barring an exigent circumstance that requires an immediate escalation of force, responding staff shall assure that:

    a. An assessment of the situation is made (the condition of the inmate, the numbers involved in the incident, the inmate's issues, the probability that control can be achieved by other means), and;

    b. Available options other than force have been exhausted (staff presence, verbal reasoning, calming tactics, provision of face-saving alternative behavior, advisement of consequences including force);

4. Staff shall use only the amount of force necessary to gain control of the inmate, with minimum harm to both staff and inmate.

5. Staff will warn inmate(s) in advance of applying additional, more intense force methods whenever doing so does not jeopardize staff safety.

6. Once compliance and control are attained and staff and inmate safety is assured, the use of force will cease.

7. On any occasion that an inmate is subjected to physical force by staff, medical staff who will prepare a report on the inmate's condition and treatment, if any must examine him or her.

| | |
|---|---|
| **Chester County Prison** | **Page 1 of 23** |
| **Policies and Procedures** | |
| **Subject: Use of Force and Restraints** | **Supersedes:** All executive orders and related memoranda |
| June 22, 2015 (Revised 01/26/17) | |

## Purpose

To provide clear direction with regard to the use of force at Chester County Prison.

## Policy

The Supreme Court of the United States has held that with regard to pre-trial detainees, the use of force must be "objectively reasonable" so as to not violate the Due Process Clause of the Fourteenth Amendment of the United States Constitution (*Kingsley v. Hendrickson, et.al., 2015*). As Chester County Prison houses both pre-trial detainees and sentenced inmates, it is the policy of Chester County Prison to ensure that force is used only when necessary and only to the degree that an objective person would consider necessary in order to gain compliance and/or control of an inmate. Force is authorized only as a means to gain control and will not be used as punishment.

## Definitions

*Force:* Physical pressure exerted by one or more persons to effect control of other person(s).

*Reasonable Force:* The least level of force that an objective person would find to be required in order to achieve control of another without inflicting unnecessary harm to that person.

*Excessive Force:* Any level of force which exceeds reasonable force.

*Deadly Force:* Force which may result in serious bodily harm or death.

*Pepper Spray (Oleoresin Capsicum - OC):* Naturally occurring inflammatory agent found in cayenne peppers which is suspended in either water or mineral oil and pressurized.

*Restraint:* A device applied to a person to limit or curb movement.

*Electronic Immobilizing Device (EID) (also known as a stun device):* A device that temporarily incapacitates a person by means of electronic interruption of neuromuscular impulses.

## Procedural Overview

1. The use of force is justifiable in situations where it is necessary to:

   a. Preserve the peace, maintain order, or prevent the commission of a felony or misdemeanor crime, including escape or attempted escape;

   b. Prevent suicide or serious self-inflicted injury.

# CHESTER COUNTY PRISON

## Strip Search

An examination of an inmate's naked body for weapons, contraband and physical abnormalities. This also includes a thorough search of the entire inmate's clothing while not being worn by the inmate.

## Training

An organized, planned, and evaluated activity designed to achieve specific learning objectives. Training may occur on site, at an academy or training center, at an institution of higher learning, through contract service, at professional meetings or through closely supervised on-the-job training. Meetings of professional associations are considered training when there is clear evidence of the above elements.

## Volunteers

Persons from the community who participate in the detention facility operations. They are selected on the basis of their skills or personal qualities to provide programs and services for the inmate population in recreation, counseling, education and religious activities. Their services are provided without cost to the facility.

## Work Release

A formal arrangement sanctioned by law, whereby an inmate is permitted to leave confinement to maintain approved and regular employment in the community, returning to custody during non-working hours. Chester County Prison's Work Release Unit is located on the grounds of Chester County Prison.

Certificate Of Service

I hereby State I'am Gaitor Brown Plaintiff
in this Case & that on Aug 2, 2022 Plaintiff Motion
to Compel was handed to a Jail Official with Exhibits
A,B,C,D,E,F,G,H,I,J, for fist Class Postage to the
address below

United States District Court
601 Market Street
Philadelphia PA 19106

Dated Aug 2, 2022

Gaitor Brown
Mcshannon Valley Jail
555 Geo Drive
Phillipsburg, PA 16866
s/Gaitor Brown

Carter Brown
Moshannon Valley Jail
555 Geo Drive
Philipsburg PA 16866
A-04100105D
SMU 11-307L

RECEIVED
AUG - 5 2022

U.S.M.S.
X-RAY

United States District Court
601 Market Street
Philadelphia PA 19106





Hasler
08/03/2022
US POSTAGE $002.88⁰
FIRST-CLASS MAIL
ZIP 16866
011E11683466